ERICKSON *v.* UNIVERSAL OIL PRODUCTS CORPORATION

1. UNEMPLOYMENT COMPENSATION—CHANGES IN WORK CONDITIONS—
WORK STOPPAGE—ELIGIBILITY FOR BENEFITS.

   Employees who protest a change in working conditions by a work
   stoppage are usually ineligible for unemployment compensa-
   tion.

2. UNEMPLOYMENT COMPENSATION—CHANGES IN WORK CONDITIONS—
LIMITED HAZARD—WORK STOPPAGE—ELIGIBILITY FOR BENEFITS.

   Grievance procedures, not ordinarily a work stoppage, must be
   used by workers in order to be eligible for unemployment
   compensation benefits where a change in working conditions
   represents a hazard.

3. UNEMPLOYMENT COMPENSATION—CHANGES IN WORK CONDITIONS—
DANGER TO LIFE.

   The Legislature, in denying men unemployment compensation
   for work missed because of a labor dispute, did not expect
   men to continue to work where the employer's unilateral change
   in working conditions exposed the men to a serious risk of im-
   mediate loss of life or limb.

4. UNEMPLOYMENT COMPENSATION—CHANGES IN WORK CONDITIONS—
DANGER TO LIFE—ELIGIBILITY FOR BENEFITS.

   Denial of plaintiffs' claim for unemployment compensation was
   error where the Employment Security Appeal Board refused
   to consider the plaintiffs miners' claim that their employer's
   unilateral change in signalling procedures used during the
   raising and lowering of a mancar used to carry men in and
   out of a mine created such an immediate danger to life and
   limb as to justify their refusal to work.

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 48 Am Jur, Social Security, Unemployment Insurance, and
Retirement Funds § 36.

Appeal from Houghton, Stephen D. Condon, J. Submitted Division 3 May 13, 1971, at Grand Rapids. (Docket No. 10428.)   Decided October 19, 1971.

Harold F. Erickson and others presented their claim for unemployment compensation against Universal Oil Products Corporation (Calumet & Hecla Group).   Benefits denied by the Employment Security Commission Appeal Board.   Plaintiffs appealed to circuit court.   Affirmed.   Plaintiffs appeal. Reversed and remanded.

*Wisti & Jaaskelainen*, for plaintiffs.

*McLean & McCarthy*, for the Universal Oil Products Corporation (Calumet & Hecla Group).

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *E. J. Setlock*, Assistant Attorney General, for Employment Security Commission.

Before: FITZGERALD, P. J., and HOLBROOK and LEVIN, JJ.

LEVIN, J.   The plaintiffs filed claims for unemployment compensation which were denied successively by the Employment Security Commission, the appeal board, and the circuit court on the ground that the plaintiffs were disqualified for benefits because their unemployment was due to a "labor dispute". See MCLA § 421.29(8) (Stat Ann 1960 Rev § 17.531 [8]).

The plaintiffs and others were employed in the Kingston Copper Mine of defendant, Universal Oil Products Corporation (Calumet & Hecla Group), hereafter the "employer".   On May 8, 1968, the em-

ployer unilaterally changed the procedures followed in signalling the hoist engineer during the raising and lowering of the mancar used to carry men into and out of the mine.

The miners refused to enter the mine claiming that the change had drastically increased the danger of accidental injury. Although the employer did not return to the old method of signalling, many of the miners, but not the plaintiffs, returned to work after May 15, 1968.

The plaintiffs did not quit their jobs nor were they laid-off or discharged. A grievance was filed and was submitted to an arbitrator, who found that the new signalling method was significantly more hazardous than the former method and was, therefore, unsafe within the meaning of the labor contract then in force and awarded call-in pay to those employees who had reported for work but refused to enter the mine. An inspector for the Bureau of Mines of the United States Department of Interior inspected the mine and made recommendations regarding the signalling system but did not find that the new procedure was unsafe.

Many labor disputes do, indeed, concern conditions of employment. However, generally the dispute is about amenities of convenience, comfort, and limited hazards.[1] It is rare that a change in working conditions represents an immediate threat to life or limb.[2]

---

[1] See, e.g., *Lillard* v. *Employment Security Commission* (1961), 364 Mich 401 (dispute about job elimination and work standards); *Linski* v. *Employment Security Commission* (1959), 358 Mich 239 (dispute about seniority and safety provisions of the labor agreement; the nature of the safety provisions and of the claimed violations is not described in the report).

[2] Where a person accepts work exposing him to a hazardous condition, it could be argued that he should not thereafter become eligible for unemployment compensation should he later decide to refuse such work without formally terminating the employment relationship. With that question we need not deal.

Normally, any unilateral change in working conditions made by an employer, if disapproved by his employees, can be made the subject of a grievance and handled in an orderly manner through the grievance procedure. In the meantime the employees can continue to work and earn a livelihood. If instead they decide to indicate their protest by a work stoppage, they would, having chosen that alternative, be ineligible under the statute for unemployment compensation.

In the ordinary case where the change in working conditions represents a limited hazard, public policy, as expressed in the legislative enactment, favors the use of the grievance procedure thereby avoiding a work stoppage. However, in an extraordinary case where there has been a significant increase in the dangers involved in the employment, the Legislature did not expect the men to continue to work at the serious risk of immediate loss of life or limb.

In *Philadelphia Marine Trade Association* v. *Unemployment Compensation Board of Review* (1963), 202 Pa Super 149 (195 A2d 138), the Superior Court of Pennsylvania dealt with a similar factual situation. There, stevedores refused to return to work and were locked out. In allowing unemployment compensation the Court reasoned:

"We have said that an employe has good cause for leaving his employment and is entitled to benefits if his health or safety is jeopardized by the job assigned to him, although mere dissatisfaction with working conditions is not enough to justify a voluntary separation. [Citations omitted.]

"The board has found on sufficient evidence that the employes engaged to unload the ship left their jobs because of abnormal hazards. This would entitle them to benefits under our decisions. There-

fore, we must affirm the board in its conclusion that such a situation is distinguishable from a mere disagreement as to whether slings or pallets were to be used. Ordinarily, quitting their job over such a dispute would not entitle those employes to benefits; however, the use of pallets in raising the cargo from a full hold in this particular case, where the ship and its hatches were small, created an imminent and immediate peril to the workmen therein and a situation which was more than a mere dispute to be settled under grievance procedures."

Also relevant are the cases holding that a worker is not made ineligible for unemployment compensation by his refusal of employment which would expose him to an immediate hazard to health or life.[3]

In the present case, the plaintiffs were employed in an already dangerous occupation which allegedly was made significantly more hazardous by the unilateral action of their employer.

We hold that the Employment Security Appeal Board erred in denying unemployment benefits without considering plaintiffs' claim that the change in the signalling procedures created such an immediate danger to life or limb as to justify their refusal to work. In so ruling, we do not ask the commission to determine fault in a labor dispute; the question of fault is not presented—merely that of hazard and safety. Our decision, thus, in no way departs from the rule that "the payment of unemployment bene-

---

[3] *First State Bank of East Detroit* v. *Keegan* (1962), 366 Mich 544 (bank clerk refused teller's job because it aggravated her nervous condition); *Fannon* v. *Federal Cartridge Corporation* (1945), 219 Minn 306 (18 NW2d 249) (employee in ordnance plant quit because of allergy to gun powder); *Dynamic Manufacturers, Inc.*, v. *Employment Security Commission* (1963), 369 Mich 556 (laid-off employees refused to cross picket lines under threat of personal injury); accord: *Kalamazoo Tank & Silo Company* v. *Unemployment Compensation Commission* (1949), 324 Mich 101; cf. *Knight-Morley Corporation* v. *Employment Security Commission* (1957), 350 Mich 397.

fits is not dependent upon the merits of a labor controversy".[4]

Reversed and remanded to the Employment Security Appeal Board for further proceedings consistent with this opinion.

All concurred.

---

[4] *Lawrence Baking Co.* v. *Unemployment Compensation Commission* (1944), 308 Mich 198, 208; *Intertown Corporation v. Unemployment Compensation Commission* (1950), 328 Mich 363, 366; *Lillard* v. *Employment Security Commission, supra,* p 419.