WILKERSON v JACKSON PUBLIC SCHOOLS

Docket No. 101425. Submitted March 16, 1988, at Lansing. Decided May 6, 1988. Leave to appeal applied for.

Susan A. Wilkerson and others were employed as teachers or teachers' aides in the Adult Basic Education program in the Jackson Public Schools. Under the program the instruction is given individually to each student, until the student attains a seventh grade level of competency in reading, writing and mathematics. Prior to 1982, the program operated year-round with only a two-week break in the summer. In the summer of 1982, the summer break was expanded to four weeks. In 1983, the summer break was increased to ten weeks, and a summer session was tentatively scheduled but then cancelled. During the 1983-84 school year, all summer instruction was eliminated and the program was operated according to the same general schedule as the school system's K-12 program, with an eleven-week summer break. Students returning from breaks resumed studies where they left off. The scheduling changes were made as a cost-cutting measure. These teachers and teachers' aides claimed unemployment compensation benefits for the break periods in 1983 and 1984, which were denied by the Employment Security Commission on the basis that they were ineligible to receive the benefits under the section of the Employment Security Act which provides for the denial of benefits for any period between two successive academic years or for an established and customary vacation period. Claimants appealed and the Jackson Circuit Court, Alexander C. Perlos, J., reversed. The Jackson Public Schools appealed.

The Court of Appeals *held:*

1. The break periods did not constitute periods between successive academic years.

2. The breaks in question could not be considered established and customary vacation periods.

Affirmed.

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 5, 6, 32 *et seq.*

See Index to Annotations under Teachers and Instructors; Unemployment Compensation.

1. Unemployment Compensation — Judicial Construction — Employment Security Act.

   The purpose of the Employment Security Act is to safeguard the general welfare through the dispensation of benefits intended to ameliorate the disastrous effects of involuntary unemployment; to that end the act is to be liberally construed and, thus, the disqualification provisions should be narrowly construed (MCL 421.1 *et seq.*; MSA 17.501 *et seq.*).

2. Unemployment Compensation — Schools — Teachers — Denial Periods — Academic Years — Summer Breaks — Employment Security Act.

   Summer breaks in an instructional program where the length of the instructional periods is determined by budgetary considerations rather than teaching requirements are not periods between academic years for purposes of denial of unemployment benefits (MCL 421.27[i]; MSA 17.529[i]).

*Christian, Conant & Thiede* (by *Brian E. Thiede*), for claimants.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *John N. Gretzinger*), for the Jackson Public Schools.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Sherwin Vine,* Assistant Attorney General, for the Employment Security Commission.

Amicus Curiae:

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann* and *Eli Grier*), for Michigan Education Association.

Before: Gribbs, P.J., and Beasley and G. A. Drain,* JJ.

Per Curiam. The Jackson Public Schools appeal

_____

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

as of right from a circuit court order reversing the Michigan Employment Security Commission Board of Review's decision that claimants were ineligible to receive unemployment benefits pursuant to MCL 421.27(i) MSA 17.529(i). We affirm.

Claimants are teachers or teachers' aides employed by the Adult Basic Education (ABE) program in the Jackson Public Schools and paid on an hourly basis. Claimants sought unemployment compensation benefits for periods of involuntary unemployment in the summer months of 1983 and 1984. The MESC Board of Review determined that claimants were ineligible to receive the benefits under § 27(i) of the Michigan Employment Security Act, MCL 421.1 *et seq.*; MSA 17.501 *et seq.*, which provides for the denial of benefits for any period "between two successive academic years" or "an established and customary vacation period." The circuit court reversed, ruling that claimants could not be denied benefits under either of the pertinent denial periods. The trial court concluded that the period at issue was between academic years but that the statutory denial period did not apply because the nonwork period was unexpected and unilaterally enforced. Although we disagree with some of the trial court's conclusions, we believe that the trial court reached the correct result.

Since there is no dispute as to the underlying facts in this case, the questions presented on appeal will be treated as matters of law. *Bonnette v West Ottawa Public Schools,* 165 Mich App 460, 470-471; 419 NW2d 593 (1987). The critical question before us is whether the periods during which claimants did not work were denial periods under the statute.

In construing the statute, appellate courts have the duty to ascertain and effectuate the intent of

the Legislature. *Bonnette,* 165 Mich App 471; *The Lamphere Schools v The Lamphere Federation of Teachers,* 400 Mich 104, 110; 252 NW2d 818 (1977). The Legislature's intent in passing MESA was to safeguard the general welfare through the dispensation of benefits intended to ameliorate the disastrous effects of involuntary unemployment. The provisions of the act are to be liberally construed in order to give effect to this remedial policy. For the same reason, the disqualification provisions should be narrowly construed. *Bonnette,* 165 Mich App 471; *Laya v Cebar Construction Co,* 101 Mich App 26, 34-35; 300 NW2d 439 (1980).

The term "academic year" is defined by the statute as follows:

> For the purposes of this subsection, "academic year" means that period, as defined by the educational institution, when classes are in session for that length of time required for students to receive sufficient instruction or earn sufficient credit to complete academic requirements for a particular grade level or to complete instruction in a noncredit course. [formerly MCL 421.27(i)(4); MSA 17.529(i)(4), now MCL 421.27(i)(8); MSA 17.259(i)(8).]

The ABE program in this case provides remedial instruction to adults on an individual basis. The program is designed to help the participants attain seventh grade level skills in reading, writing and mathematics so that they will be eligible for adult high school or the General Equivalency Diploma program. Students may enroll in the ABE program at any time during the year. Upon enrollment, each student is tested to determine his or her level of competency. The students' skills range from preschool level to nearly seventh grade level. Consequently, some students spend several years in

the program while others complete the program within a few class sessions. Students are free to come and go to class sessions as they please. When a student returns, whether they were gone a day, weeks or months, they start up where they left off. Advancement is entirely dependent on the individual progress of the student.

Prior to 1982, the ABE program operated year-round with only a two-week break in the summer. In the summer of 1982, the summer break was expanded to four weeks. In 1983, the summer break was increased to ten weeks. A summer session was tentatively scheduled but then cancelled. During the 1983-84 school year, all ABE summer instruction was eliminated and the ABE program was operated according to the same general schedule as the school system's K-12 program, with an eleven-week summer break. According to the testimony of Bruce Ambs, the school system's director of personnel and labor relations, the scheduling changes were made as a cost-cutting measure.

We conclude that the summer breaks in ABE instruction, for the years at issue in this case, are not periods between academic years as this term was defined by the Legislature. The length of the ABE instructional periods is determined by budgetary constraints rather than by the length of time needed to complete the requirements of a particular grade or course. Students do not, as a matter of plan, complete any particular grade or course within any specified time period and they reenter the program after each break at the same instructional level as when class sessions ended. See *Bonnette,* 165 Mich App 472-473. We believe that, as a matter of law, the break periods in the ABE program cannot be classified as periods between two successive academic years.

We also conclude that the summer breaks between 1982 and 1984 cannot be considered established and customary vacation periods. Prior to the 1981-82 school year, the ABE program clearly had an established and customary two-week vacation period. During the 1983-84 school year, the ABE calendar was revised so that the ABE summer break period would thereafter conform with the school system's customary K-12 summer vacation. The summer break schedule changed each year during the three-year transition, making the length of the break too unpredictable to be considered established and customary. We agree with the trial court that the legislative purpose of MESA was to protect workers from the "economic crunch" caused by unexpected periods of unemployment such as those created by the school district in this case. See *Rogel v Taylor School Dist,* 152 Mich App 418, 424; 394 NW2d 32 (1986).

Affirmed.