JOHNIDES v ST LAWRENCE HOSPITAL

Docket No. 117599. Submitted April 12, 1990, at Lansing. Decided June 5, 1990.

Tim A. Johnides, an employee of St. Lawrence Hospital, was placed on administrative leave while his request to be transferred to a different position was pending. When told that he would be paid for part of, but not the full, period of leave, Johnides quit and filed with the Michigan Employment Security Commission a claim for unemployment benefits. A hearing referee rejected the claim, ruling that, because Johnides failed to pursue remedies available through the hospital's informal grievance procedure, Johnides had voluntarily terminated employment without good cause attributable to his employer and was therefore disqualified from unemployment benefits. The Michigan Employment Security Board of Review affirmed the referee's ruling. The Ingham Circuit Court, Peter D. Houk, J., reversed. St. Lawrence Hospital appealed.

The Court of Appeals *held*:

1. Good cause attributable to the hospital led to Johnides' decision to quit employment.

2. Evidence of an unemployment compensation claimant's failure to seek redress of his grievance before quitting, including failure to press his right to pursue a grievance procedure, is relevant and probative on the bona fides of his claim. Failure to pursue such remedies does not, by itself, disqualify the claimant, disentitle him to benefits, or establish that the grievances alleged to have led to the decision to quit were not sufficient to constitute good cause. Here, Johnides' failure to pursue the hospital's informal grievance procedure did not operate to disqualify him from unemployment benefits, given the nature of the grievance procedure, the nature of the dispute between Johnides and the hospital, and the futility of resort to the grievance procedure.

Affirmed.

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 59, 91, 92.
See the Index to Annotations under Unemployment Compensation.

1. Unemployment Compensation — Voluntary Termination of Employment — Good Cause.

An employee who leaves employment voluntarily is disqualified from receiving unemployment benefits unless he left with good cause attributable to the employer; good cause exists where an employer's actions would cause a reasonable, average, and otherwise qualified worker to give up his employment (MCL 421.29[1][a]; MSA 17.531[1][a]).

2. Unemployment Compensation — Voluntary Termination of Employment — Good Cause — Grievance Procedures.

Evidence of an unemployment compensation claimant's failure to seek redress of his grievances before quitting, including failure to press his right to pursue a grievance procedure, is relevant and probative on the bona fides of his claim; failure to pursue such remedies does not, by itself, disqualify the claimant, disentitle him to benefits, or establish that the grievances alleged to have led to the decision to quit were not sufficient to constitute good cause.

3. Unemployment Compensation — Voluntary Termination of Employment — Good Cause — Grievance Procedures.

The following are to be considered when deciding whether an unemployment compensation claimant's failure to pursue an available grievance procedure shall operate to disqualify the claimant from unemployment benefits: (1) the nature of the grievance procedure; (2) the nature of the dispute between the claimant and his former employer; and (3) whether resort to the grievance procedure would have been a mere futility.

*Legal Aid of Central Michigan* (by *Daniel Bamberry*), for Tim A. Johnides.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Philip F. Wood* and *Douglas H. Wiegerink*), for St. Lawrence Hospital.

Before: Brennan, P.J., and Maher and Neff, JJ.

Per Curiam. Tim A. Johnides' claim for unemployment benefits under the Michigan Employment Security Act, MCL 421.1 *et seq.*; MSA 17.501 *et seq.*, was denied by a Michigan Employment

Security Commission hearing referee on the ground that claimant had left work voluntarily without good cause attributable to the employer. MCL 421.29(1)(a); MSA 17.531(1)(a). The basis of the referee's decision was that claimant failed to first pursue alternate procedures for remedying his employer's actions prior to leaving employment. The decision was affirmed by the Board of Review. Claimant appealed to the Ingham Circuit Court, which reversed the hearing referee's decision. Claimant's employer, St. Lawrence Hospital, now appeals as of right from the circuit court's reversal. We affirm.

As the employer states in its brief on appeal, "the crucial issue in this appeal is whether an employee can ignore a grievance procedure specifically designed to address employee complaints, voluntarily quit work, and yet remain eligible for unemployment compensation."

Claimant had been employed by St. Lawrence Hospital as a psychiatric technician for approximately eight years. On January 9, 1987, claimant was employed in the third shift in psychiatric unit A. When claimant entered the intensive care area, he found no staff present. Because this situation had occurred before, claimant complained to the head nurse, who indicated she would investigate the matter. Claimant called in sick the following two days. On January 12, claimant met with acting personnel director Heather Fritzler, who then arranged a meeting between claimant and David Finkbeiner, the hospital's administrative director. Because of the problems he had with the night shift, claimant expressed a desire to work in another location. Claimant was informed he would be placed on administrative leave for two weeks while an attempt was made to find another position for him. The hospital was unable to place claimant in

another position and claimant eventually agreed to work a different shift in the same unit. When claimant inquired about being paid for the period of administrative leave, he was told he would not be paid. Finkbeiner, who apparently admitted he was somewhat confused over claimant's administrative leave status, later informed claimant that he would be paid for four of the nine days missed. Claimant did not accept this proposal and on January 25, 1987, he quit. After bringing an action in small claims court, claimant was awarded a judgment compensating him for the full period of his administrative leave.

Claimant's application for unemployment benefits was denied by the Employment Security Commission pursuant to MCL 421.29(1)(a); MSA 17.531(1)(a), which provides, in pertinent part:

(1) An individual shall be disqualified for benefits in the following cases in which the individual:

(a) Left work voluntarily without good cause attributable to the employer or employing unit.

Thus, the Employment Security Act recognizes that, where there exists good cause attributable to the employer, an employee may voluntarily leave his employment and yet remain eligible for unemployment compensation. This Court has held that good cause exists "where an employer's actions would cause a reasonable, average, and otherwise qualified worker to give up his or her employment." *Warblow v The Kroger Co,* 156 Mich App 316, 321; 401 NW2d 361 (1986); *Carswell v Share House, Inc,* 151 Mich App 392, 395; 390 NW2d 252 (1986).

A reviewing court may reverse a decision of the Employment Security Commission only if the decision is contrary to law or if it is not supported by

competent, material and substantial evidence on the whole record. MCL 421.38; MSA 17.540; *Chrysler Corp v Sellers,* 105 Mich App 715, 720; 307 NW2d 708 (1981). If there is no dispute as to the underlying facts, questions presented on appeal are to be treated as matters of law. *Id.*

In this case, the hearing referee concluded that good cause attributable to the employer did not exist because claimant failed to avail himself of alternate procedures for remedying the employer's actions. The referee stated:

> Taking a position most favorable to the claimant, that he was entitled to the entire nine days of administrative leave pay, that he was only offered four days of administrative pay, this Referee finds, under the circumstances in the instant case, that the claimant still has not established a good cause attributable to the employer for quitting his job, and therefore, he is disqualified for benefits under Section 29(1)(a) of the Act. *The reason this Referee comes to this conclusion is because the claimant failed to follow alternate procedures that were available to him.* The claimant could have continued to work, and contacted the Department of Labor and filed a wage complaint with that Department. The claimant could have continued to work and do what he did after he quit his job, and that is, file a claim in the Small Claims Court. However, the most obvious option open to the claimant was for him to file a grievance, which he was aware that he had the right to do. Employer's [sic] are not perfect, employer's [sic] make mistakes, and this is what the grievance procedure is for. *The claimant may have been wronged, but he did not avail himself of the remedies he had to correct the wrong that was done to him. The claimant did not give the employer the opportunity to correct the situation that existed.* [Emphasis added.]

It is clear to us that, but for claimant's failure to

pursue his alternate remedies, the referee found good cause attributable to the employer for claimant's decision to leave. This is apparent from both the referee's acknowledgment that claimant was entitled to be paid for the full period of his administrative leave and the referee's conclusion that the hospital acted wrongfully in refusing to pay the same. Further, had the referee found that good cause was not established, it would have been unnecessary to discuss the matter of claimant's alternate remedies. Having reviewed the record, we agree that, but for the issue of claimant's alternate remedies, a finding of good cause attributable to the employer is supported by competent, material and substantial evidence on the whole record. See *Degi v Varano Glass Co,* 158 Mich App 695; 405 NW2d 129 (1987). Accordingly, resolution of the case at hand turns on whether the hearing referee acted improperly by going one step further and determining that a finding of good cause was precluded because claimant failed to avail himself of his alternate remedies prior to leaving his employment.

To begin with, we cannot accept that portion of the referee's decision implying that an employee must seek either judicial or administrative relief as a prerequisite for preserving eligibility for unemployment benefits that may otherwise be due. Although the provisions of the Employment Security Act are to be liberally construed, the disqualification provisions are to be construed narrowly. *Wilkerson v Jackson Public Schools,* 170 Mich App 133, 136; 427 NW2d 570 (1988), lv den 432 Mich 878 (1989). Nowhere does the act require, nor does it suggest, that a claimant must first file a complaint in either a judicial forum or with the Department of Labor in order to preserve his eligibility for unemployment compensation. Therefore, in

the absence of such a provision, and in light of the remedial purpose of the act, we will not impose such a requirement.

This now brings us to the central question: whether an employee who voluntarily leaves his employment, without first attempting to resolve through an available grievance procedure the grievance alleged to have led to his decision to quit, is precluded from establishing good cause for leaving.

In recognition that there are indeed instances where an employee will rightfully feel compelled to give up his employment for reasons attributable to the employer, many employers provide their employees with various types of grievance procedures in order to allow them the opportunity to resolve their disputes on the job, rather than being forced to elect the harsher course of giving up their employment altogether. We agree that, even where good cause to leave exists, it would be more beneficial to the employer, the employee, and society economically if employees with disputes attempted to first resolve such disputes through these grievance procedures. Nevertheless, we do not believe that an employee's failure to resort to such a procedure should necessarily be dispositive on the issue of good cause so as to always result in disqualification for benefits under MCL 421.29(1)(a); MSA 17.531(1)(a). We have reviewed the cases cited by the parties and believe the best rule is that stated in *Stonco Electric Products Co v Bd of Review, Division of Employment Security, Dep't of Labor & Industry,* 106 NJ Super 6, 10; 254 A2d 111 (1969):

> Evidence of a claimant's failure to seek redress of his grievances before quitting, including failure to press his right to pursue a grievance procedure,

> is certainly relevant and probative on the *bona
> fides* of his claim. . . . But failure to pursue such
> remedies does not, by itself, disqualify the claim-
> ant, disentitle him to benefits, or establish that the
> grievances alleged to have produced the quit were
> not sufficient to constitute "good cause" . . . .
> [Citation omitted.]

Thus, under this rule, the failure to follow an available grievance procedure would be just one factor in determining whether a claimant had good cause to leave his employment. Applying this rule to the case at hand, we would therefore find that, to the extent the hearing referee's decision rested solely on the fact that claimant failed to first pursue the hospital's grievance procedure, his decision was contrary to law.

It must now be decided whether claimant's failure to first pursue the hospital's grievance procedure, when considered in light of the other facts of the case, should preclude claimant from establishing good cause attributable to the employer so as to disqualify him from receiving benefits. Because there is no dispute as to the underlying facts on this issue, this Court can decide the issue as a matter of law, making a remand unnecessary. *Chrysler Corp, supra.*

In deciding whether the failure to pursue an available grievance procedure will operate to disqualify an employee from receiving unemployment benefits, many factors should be considered. First, the nature of the grievance procedure should be analyzed. For instance, where there exists a formal employer-employee negotiated grievance procedure, such as that under a collective bargaining agreement, the reasons for requiring an employee to abide by the terms of the agreement, and therefore first resort to the grievance procedure, are much more compelling than in the case where

there exists merely an informal employer-imposed procedure. Further, the nature of the dispute should be analyzed in light of the procedure available. That is, it should be determined whether the procedure is one likely to resolve the dispute or whether the dispute at issue is of the type contemplated by the grievance procedure. If not, then a failure to resort to the procedure should not affect a claimant's eligibility for unemployment compensation. Finally, other variables, such as whether resort to the grievance procedure would be a mere futility, should also be examined. Each of these considerations should be analyzed in light of all the other relevant facts of the case in determining whether a reasonable, average, and otherwise qualified worker would feel compelled to give up his employment without first resorting to an available grievance procedure.

In this case, the available grievance procedure is one outlined in defendant's employee handbook, which provides:

> If you have a question, complaint or misunderstanding about your *duties* or about *Hospital policy,* there are three steps that have been established for resolving your grievances. The steps to take are:
>
> 1. Take the complaint to your immediate supervisor. (S)he will try to resolve the problem.
>
> 2. If you are not satisfied with the results of your conference with your supervisor, present the problem in writing to your department head, who will give you a written answer within five days.
>
> 3. If you are still not satisfied, submit your complaint in writing to the Personnel Office for referral to Administration for final decision. If you wish, the Personnel Department will be happy to help you prepare your written statement. [Emphasis added.]

This procedure cannot be viewed as the equiva-

lent of a formal employer-employee negotiated procedure such as one might find under a collective bargaining agreement. Rather, it is an informal, employer-imposed procedure. Moreover, it does not appear to be designed so much for resolving disputes as it is for merely directing the employee to the proper chain of command for submitting questions or complaints. Additionally, the language of the handbook makes the procedure available only for those complaints or disputes concerning either an employee's duties or hospital policy. The dispute in this case did not concern either of these areas. Instead, the dispute concerned a private agreement between the hospital and claimant to pay claimant for his period of administrative leave. Finally, it was the hospital's administrative director who ultimately rejected the claim for wages in this case. In the face of rejection from the administrative director, we believe that resort to either an immediate supervisor, department head, or the personnel office would surely have been futile. Therefore, in light of the above, we cannot find that a reasonable, average, and otherwise qualified worker would have felt compelled to utilize the grievance procedure under the facts of this case prior to leaving employment. Therefore, we find that claimant's failure to resort to the hospital's grievance procedure did not affect his eligibility for unemployment benefits, and that the referee's decision denying benefits on this basis is not supported by competent, material and substantial evidence on the whole record.

Accordingly, for the reasons discussed in this opinion, we affirm the decision of the circuit court reversing the decision of the hearing referee.

Affirmed.