WOHLERT SPECIAL PRODUCTS, INC v MICHIGAN
EMPLOYMENT SECURITY COMMISSION

Docket No. 158572. Submitted October 12, 1993, at Marquette. De-
cided November 15, 1993, at 9:15 A.M. Leave to appeal sought.

Bruce Behnke and other employees of Wohlert Special Products,
Inc., sought unemployment compensation benefits after they
went on strike and Wohlert continued its operations by hiring
temporary replacement employees and using management per-
sonnel. Wohlert eventually hired permanent replacements and
converted the temporary replacements to permanent replace-
ment status. Throughout the strike, positions remained unfilled
and Wohlert informed the claimants that positions were avail-
able for those who wished to return to work. All the strikers
who requested to return to work were rehired. Some of the
claimants were denied benefits under MCL 421.29(8); MSA
17.531(8), the labor dispute disqualification provision of the
Michigan Employment Security Act, MCL 421.1 *et seq.*; MSA
17.501 *et seq.*, although Behnke was found eligible for benefits
after the Michigan Employment Security Commission deter-
mined that his prior disqualification under § 29(8) ended when
Wohlert began hiring the permanent replacements. Wohlert
requested that the cases be consolidated and, following a hear-
ing, a MESC referee found that the claimants' disqualification
under § 29(8) had ended. The referee's decision was affirmed by
the Michigan Employment Security Board of Review, and that
decision was affirmed by the Chippewa Circuit Court, Nicholas
J. Lambros, J. Wohlert appealed.

The Court of Appeals *held:*

The circuit court and the Michigan Employment Security
Board of Review erred as a matter of law in concluding that
the labor dispute disqualification of all the claimants under
§ 29(8) ended when Wohlert began hiring permanent replace-
ments.

1. The claimants' positions never were filled by permanent

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 164, 167, 168.

Comment Note.—General principles pertaining to statutory disqual-
ification for unemployment compensation benefits because of
strike or labor dispute. 63 ALR3d 88.

employees, but remained open throughout the strike. Furthermore, the claimants were advised by Wohlert that their jobs were available with the same duties and at the same or an increased wage rate, and every striker who requested to return to work was rehired. Under these circumstances, the circuit court erred in concluding that the strike ceased to be a substantial contributing cause of the claimants' unemployment.

2. By operation of § 29(8), the claimants' refusal to accept reinstatement during the strike precludes them from eligibility for unemployment benefits.

Reversed.

UNEMPLOYMENT COMPENSATION — LABOR DISPUTE DISQUALIFICATION — ELIGIBILITY FOR BENEFITS.

Strikers who are not permanently replaced by their employer during the course of the strike, whose positions remain open throughout the strike, who are advised by the employer that their jobs are available with the same duties and at the same or an increased wage rate, and who will be rehired upon request are disqualified for unemployment benefits under the Employment Security Act; under such circumstances the labor dispute is a substantial contributing cause of their unemployment (MCL 421.29[8]; MSA 17.531[8]).

*Miller, Johnson, Snell & Cummiskey* (by *Brent D. Rector*), for Wohlert Special Products, Inc.

*Jordan Rossen,* General Counsel, and *Richard W. McHugh,* Associate General Counsel, International Union, United Auto Workers (*Green, Renner, Weisse, Rettig, Rademacher & Clark,* by *Nino Green,* of Counsel), for the claimants.

Amicus Curiae:

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, J. Walker Henry,* and *Patrice A. Villani*), for Michigan Manufacturers Association.

Before: SAWYER, P.J., and GRIFFIN and R. M. PAJTAS,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

GRIFFIN, J. Respondent Wohlert Special Products, Inc., appeals as of right an order of the Chippewa Circuit Court affirming a Michigan Employment Security Board of Review decision ruling various claimants eligible for unemployment benefits. We reverse.

I

In 1987, the United Auto Workers (UAW) began an organizing drive at Wohlert's Sault Ste. Marie plant. On July 20, 1987, the UAW was certified by the National Labor Relations Board as the collective bargaining representative for the production and maintenance employees of Wohlert. Although Wohlert and the UAW entered into negotiations, no collective bargaining agreement was ever reached.

After approximately a year and a half of negotiations, the UAW called a strike to begin on January 30, 1989. On the Friday before the impending strike, all the employees received a letter from Wohlert. The letter informed the employees that they could choose to either go on strike or continue working. On January 30, 1989, approximately thirty-five of the forty-two employees, including the claimants, went on strike.

Wohlert continued manufacturing operations by hiring temporary replacement employees and using management personnel. It also implemented its last wage proposal, which included a thirty cent an hour increase over the prior top wage rate. In a letter sent along with the strikers' last paycheck, Wohlert informed the workers of the implemented wage increase and indicated they could still return to work.

On May 25, 1989, Wohlert began hiring permanent replacements for the striking workers. The temporary replacements previously employed by

Wohlert were converted to permanent replacement status effective May 22, 1989. Nevertheless, a continuous need for employees existed throughout the strike. Approximately ten to fifteen positions remained unfilled each day after May 26, 1989.[1]

Wohlert and the UAW continued their negotiations at a meeting held on June 1, 1989. At that time, Wohlert offered additional wage increases and informed the UAW that positions were available for strikers who wished to return to work. The UAW was also told of the permanent status of the replacement workers. In mid-July 1989, Wohlert implemented its revised wage proposal. Wohlert continued to seek employees through "word of mouth" and advertisements in a local daily newspaper and a weekly "buyers guide" publication. It also attempted to have the local Michigan Employment Security Commission (MESC) office refer job applicants. However, the MESC informed Wohlert that because of the ongoing labor dispute, the MESC would not provide referrals for employment at Wohlert.

All the strikers who requested to return to work were rehired by Wohlert. The rehired strikers were returned to the same jobs they had previously performed at a wage rate equal to or greater than before the strike. Despite the availability of work at Wohlert, the claimants continued to strike.

The claimants subsequently applied for unemployment benefits. Although various claimants were denied benefits under MCL 421.29(8); MSA 17.531(8), the labor dispute disqualification provi-

---

[1] At the referee's hearing held on October 4, 1990, testimony established that there were approximately fifteen to twenty openings on May 26, 1989. At any given moment after May 26, 1989, there were a minimum of approximately five to eight openings. However, if the management personnel who were filling in for the strikers were not included, approximately ten to fifteen openings existed each day.

sion of the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.*; MSA 17.501 *et seq.*, claimant Bruce Behnke was found eligible for benefits. The MESC determined that his prior disqualification under § 29(8) of the MESA ended when Wohlert began hiring permanent replacements on May 22, 1989. Wohlert requested that the claimants' cases be consolidated.

Following a hearing, a MESC referee found that the claimants' labor dispute disqualification under § 29(8) ended May 26, 1989, because (1) negotiations between the parties had ended, (2) the striking workers had received notice that the replacement workers were permanent, and (3) no offer of work was made to the strikers on or after May 25, 1989.[2] The referee also concluded that the claimants were not disqualified under MCL 421.29(1)(c), (d), and (e); MSA 17.531(1)(c), (d), and (e). The referee's decision was affirmed by the Michigan Employment Security Board of Review and by the circuit court.

II

Wohlert's argument challenging the claimants' eligibility for unemployment benefits under § 29(8) of the MESA is dispositive. Wohlert contends that the circuit court erred as a matter of law in concluding that the "labor dispute" disqualification for all strikers ended when Wohlert began hiring permanent replacements. We agree.

On review, a decision of the MESC may be reversed only if it is contrary to law or if the entire record is not supported by competent, material, and substantial evidence. MCL 421.38(1); MSA

---

[2] Although the referee concluded that the labor dispute disqualification ended on May 26, 1989, he modified the prior MESC eligibility determination to show that the disqualification terminated on June 3, 1989.

17.540(1); *McArthur v Borman's, Inc,* 200 Mich App 686, 689; 505 NW2d 32 (1993); *Schultz v Oakland Co,* 187 Mich App 96, 102; 466 NW2d 374 (1991). Where, as here, the underlying facts are not in dispute, the questions raised on appeal are treated as matters of law. *McArthur, supra; Grand Rapids Public Schools v Falkenstern,* 168 Mich App 529, 536; 425 NW2d 128 (1988). Because of the remedial purpose of the MESA, the provisions of the act are liberally construed. *Schultz, supra* at 103. However, disqualification provisions are to be construed narrowly. *Johnides v St Lawrence Hosp,* 184 Mich App 172, 175-176; 457 NW2d 123 (1990).

III

Section 29(8) of the MESA provides, in part:

> An individual shall be disqualified for benefits for a week in which the individual's total or partial unemployment is due to a labor dispute in active progress, or to shutdown or start-up operations caused by that labor dispute, in the establishment in which the individual is or was last employed . . . .

The question of when the hiring of permanent replacements by a struck employer ends the "labor dispute" disqualification under § 29(8) was addressed by our Supreme Court in *Plymouth Stamping, Division of Eltec Corp v Lipshu,* 436 Mich 1; 461 NW2d 859 (1990). In *Plymouth Stamping,* the workers refused to accept management demands for wage concessions and went on strike one week after the expiration of their contract. *Id.* at 7-8. The company gradually began to hire replacement workers as the strike progressed and eventually informed the replacements that it considered them permanent. *Id.* at 8. On January 15,

1981, the company advised the union that the striking workers had been replaced permanently. *Id.* However, the company agreed to allow the strikers to reapply for work if the strike was settled, but only as openings became available. *Id.* These positions would be subject to the same terms offered the new replacement workers. *Id.*

On February 26, 1981, the company advised the union of seven job positions that could be filled by the strikers if the union accepted the latest contract offer. *Id.* at 43. The union ultimately rejected the offer after notifying the company that the strikers would return to work only if rehired as a group and if the replacements were fired or laid off. *Id.* at 48. Some of the strikers subsequently applied for unemployment benefits. *Id.* at 48-49. The MESC determined that those strikers were entitled to unemployment benefits after January 15, 1981, the date they learned of their permanent replacement. *Id.* at 9. The MESC decision was affirmed by the circuit court and this Court. *Id.* at 9.

Although the lead opinion by Justice ARCHER in *Plymouth Stamping* was not joined by any other member of the Court, Justices BOYLE, CAVANAGH, and LEVIN concurred in Justice ARCHER's conclusion that the labor dispute disqualification ended when the strikers were replaced permanently.[3] A four-justice majority agreed that § 29(8) did not preclude the strikers from receiving unemployment benefits because the strike ceased to be a substantial contributing cause of their unemployment after the strikers' positions were filled permanently. *Id.* at 42.

Justice ARCHER was the only justice who viewed subsequent job openings by the company as irrelevant to the strikers' continued eligibility for unem-

---

[3] Justice BOYLE and Justice LEVIN wrote separate opinions in the case. Justice CAVANAGH concurred in Justice BOYLE's opinion.

ployment benefits.[4] *Id.* at 19-20. Justices BOYLE, CAVANAGH, and LEVIN agreed that a claimant's refusal to accept offered employment at Plymouth Stamping "may be" relevant to whether the labor dispute disqualification should be reinstated. *Id.* at 42, 44. Because Justice LEVIN found the record insufficient to make this determination, he concluded that a remand for further fact finding was necessary to determine the availability of work at Plymouth Stamping after the claimants were replaced permanently.[5] *Id.* at 45. Justice LEVIN was joined in the remand order by Justices BRICKLEY, RILEY, and GRIFFIN. *Id.* at 60. With the exception of the remand, Justices BRICKLEY, RILEY, and GRIFFIN dissented and would have denied unemployment benefits on the basis of § 29(8).[6]

IV

In the present case, the strikers' positions never were filled by permanent employees. On the contrary, the positions of the strikers remained open throughout the strike. The strikers were advised by Wohlert that their jobs were available with the same duties and at the same or an increased wage rate. Moreover, every striker who requested to return to work was rehired by Wohlert. Under

[4] Justice ARCHER believed that the refusal of individual strikers to cross the picket line and apply for available work did not make their unemployment "voluntary" and, therefore, disqualify them from receiving unemployment benefits because such positions were not "suitable" work under MCL 421.29(6) and (7); MSA 17.531(6) and (7). *Id.* at 19-20.

[5] Justice BOYLE fully concurred in all of Justice LEVIN's opinion "except [for] the result of remand." *Id.* at 42.

[6] The three justices joined with Justice LEVIN to order a remand to the MESC to determine: "1) the number of discrete positions that became available after the employer hired permanent replacements, 2) the date when each position became available, 3) which claimant was entitled to fill each position, and 4) whether the employer notified the union of each vacancy." *Id.* at 45.

these circumstances, we cannot agree that the strike ceased to be a substantial contributing cause of the claimants' unemployment.

After applying *Plymouth Stamping* to the facts of the present case, we hold that by operation of § 29(8) the claimants' refusal to accept reinstatement at Wohlert during the strike precludes the claimants from eligibility for unemployment benefits. The rulings below to the contrary are erroneous as a matter of law.

Our resolution of this issue renders it unnecessary for us to consider Wohlert's remaining challenges to the claimants' eligibility for unemployment benefits.

Reversed.