EMPIRE IRON MINING PARTNERSHIP v ORHANEN

Docket Nos. 166054, 166055, 166056. Submitted May 10, 1994, at
    Marquette. Decided May 23, 1995, at 9:05 A.M.

   Peter Orhanen and two other employees who went on strike
   against Empire Iron Mining Partnership and Tilden Magnetite
   Partnership each filed a claim for unemployment compensation
   benefits with the Michigan Employment Security Commission
   after working two consecutive weeks during the strike for more
   than one employer and receiving wages that equaled or ex-
   ceeded the weekly benefit rate for the employment involved in
   the strike. The Michigan Employment Security Board of Re-
   view determined that each claimant's interim employment with
   multiple employers terminated his labor dispute disqualifica-
   tion from unemployment compensation benefits pursuant to
   MCL 421.29(8); MSA 17.531(8). Empire Iron and Tilden Magne-
   tite appealed in the Marquette Circuit Court with respect to
   each claimant, arguing that the interim employment must be
   with a single employer. The court, Edward A. Quinnell, J.,
   consolidated the appeals and affirmed the decision of the board
   of review. Appeals by Empire Iron and Tilden Magnetite with
   respect to the claimants were consolidated by the Court of
   Appeals, and the Michigan Employment Security Commission
   filed a cross appeal.

   The Court of Appeals held:

   MCL 421.29(8); MSA 17.531(8) does not require that the
   interim employment be with only one employer in order for the
   termination of a striker's labor dispute disqualification from
   unemployment compensation benefits.

   Affirmed.

   MacKenzie, P.J., dissenting, stated that MCL 421.29(8); MSA
   17.531(8) requires that the interim employment be with one
   employer only in order for a striker to requalify for unemploy-
   ment compensation benefits.

REFERENCES

UNEMPLOYMENT COMPENSATION — LABOR DISPUTE DISQUALIFICATION
— REQUALIFICATION — MULTIPLE EMPLOYERS.

> An employee who goes on strike against an employer may qualify
> for unemployment compensation benefits during the strike by
> obtaining interim employment from one or more other employ-
> ers for at least two consecutive weeks and at a wage that
> equals or exceeds the weekly benefit rate for the employment
> involved in the strike (MCL 421.29[8]; MSA 17.531[8]).

*Clancey, Hansen, Chilman, Graybill & Greenlee,
P.C.* (by *Ronald E. Greenlee*), for Empire Iron
Mining Partnership and Tilden Magnetite Part-
nership.

*Bridges & Houghton, P.A.* (by *Bruce L. Hough-
ton*) and *Peter, Engberg & Peterson* (by *John G.
Engberg* and *Scott A. Higbee*), for Peter Orhanen
and others.

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, and *Mark F. Davidson,*
Assistant Attorney General, for Michigan Employ-
ment Security Commission.

Before: MACKENZIE, P.J., and NEFF and R. L.
OLZARK,* JJ.

NEFF, J. These three cases involve the payment
of unemployment benefits to striking employees of
appellant mining operations. The employers ap-
peal as of right from a circuit court opinion and
order affirming decisions by the Michigan Employ-
ment Security Board of Review that these employ-
ees were not disqualified from receiving unemploy-
ment benefits because they requalified for benefits
under § 29(8) of the Michigan Employment Secu-
rity Act (MESA), MCL 421.29(8); MSA 17.531(8).
Each employee had more than one employer dur-
ing the two-week requalification period. The Michi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

gan Employment Security Commission has filed a
cross appeal aligned with the employers' position.

We hold that the statute does not require the
subsequent employment to be with only one em-
ployer as appellants argue and accordingly we
affirm. We agree with the circuit court and the
board of review, both of which held that the
phrase "an employer" found in § 29(8) can include
more than one employer. The employment ob-
tained by these three claimants was bona fide
within the statutory definition of the term "em-
ployment" found at MCL 421.42(1); MSA 17.545(1).
I reached a similar conclusion with regard to the
thirteen claimants in *Empire Iron Mining Partner-
ship v Asmund,* 211 Mich App 118; 535 NW2d 223
(1995), in my dissenting opinion.

I

Claimant employees, who are members of the
United Steelworkers Union, went on strike against
appellant employers from July 31, 1990, to Decem-
ber 1, 1990. As striking workers, they were dis-
qualified from receiving unemployment benefits
under the labor dispute disqualification set forth
in § 29(8) of the MESA. That subsection states in
pertinent part:

> An individual shall be disqualified for benefits
> for a week in which the individual's total or
> partial unemployment is due to a labor dispute in
> active progress . . . . [MCL 421.29(8); MSA
> 17.531(8).]

The same subsection provides for the termina-
tion of the labor dispute disqualification under
certain conditions. The relevant portion of § 29(8),
added when the Legislature enacted 1974 PA 104,
states:

An individual's disqualification imposed or imposable under this subsection shall be terminated by the individual's *performing services in employment with an employer in at least 2 consecutive weeks* falling wholly within the period of the individual's total or partial unemployment due to the labor dispute, *and* in addition by *earning wages in each of those weeks in an amount equal to or in excess of the individual's* actual or potential *weekly benefit rate* with respect to those weeks based on the individual's employment with the employer involved in the labor dispute. [MCL 421.29(8); MSA 17.531(8). Emphasis added.]

In each of these cases, the claimants worked for multiple employers during the strike period, but never worked for a single employer for two consecutive weeks. Each claimant, however, earned the wages necessary for requalification during two consecutive weeks when the wages from his multiple employers were combined. The board of review concluded that the claimants could combine their wages from their multiple employers during two consecutive weeks for requalification under § 29(8), and hence could collect benefits chargeable against appellants' MESC accounts while the claimants continued their strike against appellants. The circuit court affirmed. We agree.

II

These cases involve that part of § 29(8) that requires a striking worker to perform "services in employment with an employer" for at least two consecutive weeks in order to terminate the labor dispute disqualification. As previously noted, none of the claimants in these cases worked two consecutive weeks for any single employer during the strike, but each performed services for multiple employers over a period of two consecutive weeks

and had total wages at least equal to his weekly benefit rate. The employers' position is that the statutory language "services in employment with an employer" should be construed as requiring a striking worker to obtain employment with one particular employer for a two-week period in order to requalify for benefits. The striking workers' position is that the statutory language should be construed as requiring employment with any number of entities who fit the definition of an "employer," see MCL 421.41; MSA 17.543, over a two-week period. The only question then is whether the reference in § 29(8) to "an employer" prevents these claimants from reestablishing eligibility for benefits.

The dissent would add language to the statute to reach its conclusion that these workers are disqualified because they worked for more than one employer. We will not read the phrase "substantial, bona fide interim employment" into § 29(8) as the dissent does, even while conceding that the term "an employer" can be construed to mean "a minimum of one employer."

A

The MESA is a remedial act and its statutory scheme is intended to safeguard the general welfare. *Tomei v General Motors Corp,* 194 Mich App 180, 184; 486 NW2d 100 (1992). It is entitled to liberal interpretation to give effect to its remedial policy. *Wohlert Special Products, Inc v MESC,* 202 Mich App 419, 424; 509 NW2d 825 (1993); *Tomei, supra.* Disqualifications are to be narrowly construed and, in the absence of provisions requiring disqualification, we will not judicially impose such requirements. *Johnides v St Lawrence Hosp,* 184 Mich App 172, 177-178; 457 NW2d 123 (1990);

*Wilkerson v Jackson Public Schools,* 170 Mich App 133, 136; 427 NW2d 570 (1988).

In *Dow Chemical Co v Curtis,* 431 Mich 471, 480; 430 NW2d 645 (1988), our Supreme Court pointed out that 1974 PA 104 amended § 29(8) to ''restore the viability'' of the labor dispute disqualification in light of the interpretation of that section found in *Great Lakes Steel Corp v MESC,* 381 Mich 249; 161 NW2d 14 (1968). The amendment of § 29(8) was accomplished with an eye toward establishing objective criteria to evaluate interim employment. The amendment thereby supplied a means to determine whether employers are entitled to claim the bar of the disqualification.

B

The Legislature achieved is purpose by amending § 29(8) to require that two objective criteria be met in order to terminate the labor dispute disqualification for receipt of benefits: (1) the claimant must have employment for at least two weeks, and (2) have earned at least as much as the weekly benefit rate for the employment involved in the labor dispute. These two relatively minimal requirements are clearly and succinctly established in the statute and nothing more is required. Statutory construction is unnecessary because the language is unequivocal and unambiguous. *Lorencz v Ford Motor Co,* 439 Mich 370, 376; 483 NW2d 844 (1992). We cannot and should not add requirements to the statute that are not found there.

Our dissenting colleague would add requirements to the requalification determination not found in the statute by holding that workers must obtain ''substantial, bona fide interim employment,'' *post,* p 138, and that these additional requirements cannot be met by ''[i]rregular or occa-

sional work for an array of employers . . . even
when undertaken in good faith." *Post,* p 139.

This statutory interpretation is unnecessary and
improper because it would add subjective require-
ments to the objective requirements of the statute.
When is employment "substantial" and is any-
thing less than a forty-hour week "irregular" or
"occasional"? Where would we look to find defini-
tions of these terms if we judicially add them to
the statute?

C

We need not go outside the statute to determine
whether employment is bona fide for purposes of
requalification for benefits because the statute de-
fines both the term "employment," MCL 421.42(1);
MSA 17.545(1), and the term "unemployed," MCL
421.48; MSA 17.552. The MESA serves as the basis
for the definitions to be applied to determine statu-
tory compliance. *Great Lakes, supra; Nordham v
Calhoun,* 332 Mich 460; 51 NW2d 906 (1952). The
claimants have met all of the *statutory* require-
ments of bona fide employment and any inquiry
into the subjective elements of that employment is
clearly outside the bounds of the statute.

The reach of the labor dispute disqualification
has been clearly limited by the Legislature. The
establishment of strictly objective criteria for re-
qualification serves the perfectly reasonable pur-
pose and the good public policy of avoiding litiga-
tion of large numbers of unemployment claims to
resolve difficult and disputed questions of subjec-
tive nature.

Given the concepts of liberal construction to
effect the remedial purposes of the MESA and the
narrow construction to be afforded disqualification
provisions, we hold that workers who obtain em-

ployment, in this case leaving Michigan to do so, should not be penalized for doing so even when, in the words of the dissent, the work is undertaken in "good faith." We will not add language to the statute to disallow requalification because employees work for more than one employer. We conclude that the plain reading of the statute cannot support such a penalty.

Affirmed.

R. L. OLZARK, J., concurred.

MACKENZIE, P.J. *(dissenting)*. Under § 29(8) of the Michigan Employment Security Act (MESA), MCL 421.29(8); MSA 17.531(8), striking workers are generally disqualified from receiving unemployment benefits. The same subsection provides for the termination of this labor dispute disqualification under certain conditions, however. These cases involve that part of § 29(8) requiring a striking worker to perform "services in employment with an employer" for at least two consecutive weeks in order to terminate the labor dispute disqualification. In the majority's view, that statutory language is unambiguous and allows a striker to requalify for benefits by obtaining employment with any number of entities who fit the definition of an "employer," see MCL 421.41; MSA 17.543, over a two-week period. I cannot agree. In my view, the Legislature intended § 29(8) to require bona fide employment with one employer for two consecutive weeks at wages at least equal to the claimant's weekly benefit rate before the labor dispute disqualification is terminated. Accordingly, I dissent.

As the history of these cases demonstrates, the statutory language at issue is susceptible of more than one interpretation. If reasonable minds can

differ regarding the meaning of a statute, judicial construction is appropriate. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). We should therefore look to the purpose of the statute and the harm it is designed to remedy, and apply a reasonable construction that gives effect to the intent of the Legislature. *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 644; 513 NW2d 799 (1994); *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993).

The language of § 29(8) at issue here and in *Empire Iron Mining Partnership v Asmund,* 211 Mich App 118; 535 NW2d 223 (1995), was added by 1974 PA 104. As explained in *Empire Iron Mining, supra,* 1974 PA 104 was enacted to correct the Supreme Court's failure in *Great Lakes Steel Corp v MESC,* 381 Mich 249; 161 NW2d 14 (1968), to interpret § 29 as requiring strikers to obtain bona fide interim employment in order to avoid the labor dispute disqualification. See also *Dow Chemical Co v Curtis,* 431 Mich 471; 430 NW2d 645 (1988). Thus, the Legislature's intent was to prevent striking workers from circumventing the disqualification by obtaining short-term interim employment, and to identify what constituted interim employment of sufficient substantiality to warrant termination of the labor dispute disqualification. *Empire Iron Mining, supra; Dow Chemical, supra.*

In light of the Legislature's intent that striking workers obtain substantial, bona fide interim employment before they are requalified to receive unemployment compensation benefits, it is reasonable to interpret the § 29(8) requirement of two consecutive weeks' "employment with an employer" to mean regular employment with a single employer. Requalification during a strike is based on the premise that claimants are entitled to

benefits because they have been laid off from a new job with someone other than the struck employer. See generally anno: *Unemployment compensation: Labor dispute disqualification as applicable to striking employee who is laid off subsequent employment during strike period,* 61 ALR3d 766. Irregular or occasional work for an array of employers for two weeks during the strike period, even when undertaken in good faith, does not fit that situation.

Interpreting the requirement of two weeks' "employment with an employer" as meaning employment with one employer rather than multiple employers is also consistent with the general rule that every word or phrase in a statute should be accorded its plain and ordinary meaning. *In re PSC's Determination Regarding Coin-Operated Telephones, No 2,* 204 Mich App 350, 353; 514 NW2d 775 (1994). "An" ordinarily denotes a single item or entity. Under the majority's construction, "an employer" means "a minimum of one employer." While this construction may be plausible, it clearly is not the typical meaning of the word. Had the Legislature intended the meaning assigned by the majority, presumably it would have drafted 1974 PA 104 to provide for requalification upon two consecutive weeks' "employment with one or more employers."

I interpret the requalification provisions of § 29(8) as authorizing the termination of the labor dispute disqualification when a striking worker is employed in bona fide employment by a single employer over a two-week period and earns sufficient wages from that employer. Because the claimants in these cases did not do so, I would reverse the decisions of the board of review and the circuit court finding the employees requalified to receive unemployment compensation benefits.