EMPIRE IRON MINING PARTNERSHIP v ASMUND

Docket Nos. 166041-166053. Submitted May 10, 1994, at Marquette. Decided May 23, 1995, at 9:00 A.M. Leave to appeal sought.

Donald A. Asmund and twelve other employees who went on strike against Empire Iron Mining Partnership and Tilden Magnetite Partnership each filed a claim for unemployment compensation benefits with the Michigan Employment Security Commission after working two consecutive weeks during the strike in a job created by a friend or a relative and that paid wages equal to or greater than the weekly benefit for the employment involved in the strike. In a two-to-one decision, the Michigan Employment Security Board of Review concluded that, pursuant to MCL 421.29(8); MSA 17.531(8), the claimants' interim employment terminated their labor dispute disqualification from unemployment compensation benefits. Empire Iron and Tilden Magnetite appealed in the Marquette Circuit Court with respect to each claimant. The court, Edward A. Quinnell, J., consolidated the appeals and affirmed the majority decision of the board of review. Empire Iron and Tilden Magnetite appealed with respect to each claimant. The Court of Appeals consolidated the appeals.

The Court of Appeals *held:*

The labor dispute disqualification in MCL 421.29(8); MSA 17.531(8) is terminated only when a striking worker has, in good faith, obtained interim employment for at least two consecutive weeks and at a wage at least equal to the weekly benefit rate for the employment involved in the labor dispute.

Reversed.

NEFF, J., dissenting, stated that MCL 421.29(8); MSA 17.531(8) provides for two objective criteria for termination of

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 101, 170-175.

Unemployment compensation: labor dispute disqualification as applicable to striking employee who is laid off subsequent employment during strike period. 61 ALR3d 766.

Comment Note.—General principles pertaining to statutory disqualification for unemployment compensation benefits because of strike or labor dispute. 63 ALR3d 88.

the labor dispute disqualification: employment of at least two consecutive weeks during the labor dispute and wages equal to or exceeding the weekly benefit rate for the employment involved in the labor dispute, and that the majority improperly has added to the statute a subjective criterion of bona fide employment.

UNEMPLOYMENT COMPENSATION — LABOR DISPUTE DISQUALIFICATION — REQUALIFICATION — BONA FIDE EMPLOYMENT.

An employee who goes on strike against an employer does not qualify for unemployment compensation benefits during the strike unless the employee has, in good faith, obtained employment from another employer for at least two consecutive weeks and at a wage that equals or exceeds the weekly benefit rate for the employment involved in the strike (MCL 421.29[8]; MSA 17.531[8]).

*Clancey, Hansen, Chilman, Graybill & Greenlee, P.C.* (by *W. Scott Chilman* and *Ronald E. Greenlee*), for Empire Iron Mining Partnership and Tilden Magnetite Partnership.

*Bridges & Houghton, P.A.* (by *Bruce L. Houghton*) and *Peterson, Engberg & Peterson* (by *John G. Engberg* and *Scott A. Higbee*), for Donald A. Asmund and others.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Mark F. Davidson,* Assistant Attorney General, for Michigan Employment Security Commission.

Amicus Curiae:

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, J. Walker Henry,* and *Sean M. Higgins*), for Michigan Manufacturers Association.

Before: MacKENZIE, P.J., and NEFF and R. L. OLZARK,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

MacKenzie, P.J. These cases involve the payment of unemployment benefits to striking employees of appellant mining operations. The employers appeal as of right from a circuit court opinion and order affirming decisions of the Michigan Employment Security Board of Review that certain striking employees were not disqualified from receiving unemployment benefits because they requalified for benefits under § 29(8) of the Michigan Employment Security Act (MESA), MCL 421.29(8); MSA 17.531(8), by performing "make work." The Michigan Manufacturers Association has filed an amicus brief aligned with the employers' position. We reverse.

The employees, who are members of the United Steelworkers Union, went on strike against appellants employers from July 31, 1990, to December 1, 1990. As striking workers, they were disqualified from receiving unemployment benefits under the labor dispute disqualification set forth in § 29(8) of the MESA. That subsection states in pertinent part:

> An individual shall be disqualified for benefits for a week in which the individual's total or partial unemployment is due to a labor dispute in active progress . . . . [MCL 421.29(8); MSA 17.531(8).]

The same subsection provides for the termination of the labor dispute disqualification under certain conditions. The relevant portion of § 29(8), added when the Legislature enacted 1974 PA 104, states:

> An individual's disqualification imposed or imposable under this subsection shall be terminated by the individual's *performing services in employment with an employer in at least 2 consecutive weeks* falling wholly within the period of the

individual's total or partial unemployment due to the labor dispute, *and* in addition by *earning wages in each of those weeks in an amount equal to or in excess of the individual's* actual or potential *weekly benefit rate* with respect to those weeks based on the individual's employment with the employer involved in the labor dispute. [MCL 421.29(8); MSA 17.531(8). Emphasis added.]

In each of these cases, the claimant worked for an employer for two consecutive weeks during the strike period and was paid an amount equal to or in excess of his weekly benefit rate with respect to those weeks. In each case, however, the employment was allegedly "make work" created by a friend or relative solely for the purpose of allowing the claimant to requalify for benefits under § 29(8) despite his continued participation in the strike. In almost all cases, the employment lasted only the two weeks necessary for requalification, and the claimant received higher wages than the employer normally paid for similar work so that the claimant could meet the wage requirement of § 29(8). A two-member majority of the Michigan Employment Security Board of Review concluded that under § 29(8), the "make work" jobs requalified the employees for unemployment benefits, chargeable against appellants' Michigan Employment Security Commission accounts, while the employees continued their strike against appellants. The circuit court affirmed.

The basic issue in these cases is whether, in enacting the requalification provision of § 29(8), the Legislature intended to authorize the payment of unemployment compensation benefits to any striking worker who arranges interim employment meeting the statutory time and wage requirements, or whether it was intended that unemployment benefits be paid only to those striking work-

ers whose qualifying interim employment is undertaken in good faith. In reaching the conclusion that the claimants who arranged short-term "make work" were requalified for unemployment benefits during the strike period, the board of review majority interpreted § 29(8) as imposing an objective test in which the only appropriate inquiry is whether the necessary wages were paid by an employer for two consecutive weeks. The dissenting board member found that analysis deficient because it failed to consider that the "make work" was sham employment designed to circumvent the labor dispute disqualification, contrary to the purpose and policies of the MESA. We agree with the dissenting board member.

The primary goal of statutory construction is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). The Legislature is presumed to have intended the meaning it plainly expressed. *Frasier v Model Coverall Service, Inc,* 182 Mich App 741, 744; 453 NW2d 301 (1990). However, if a literal construction of a statute would produce absurd and unjust results clearly inconsistent with the purposes and policies of the statute, a court may depart from a literal construction. *Rowell v Security Steel Processing Co,* 445 Mich 347, 354; 518 NW2d 409 (1994). Courts may look to the legislative history of an act, as well as to the history of the time during which the act was passed, to ascertain the reason for the act and the meaning of its provisions. *Great Lakes Steel Div, Nat'l Steel Corp v Dep't of Labor,* 191 Mich App 323, 327; 477 NW2d 124 (1991). In interpreting the MESA, it must be recognized that the act is intended to benefit only those involuntarily unemployed. *Baker v General Motors Corp (After Remand),* 420 Mich 463, 478; 363

NW2d 602 (1984) (opinion by RYAN, J.). Thus,
courts should interpret the MESA in light of its
stated purpose of not providing benefits to persons
who are "voluntarily" unemployed. *Id.*

Before the enactment of 1974 PA 104, § 29(8)
was silent with respect to the circumstances under
which a striker who was ineligible to receive bene-
fits under the labor dispute disqualification could
requalify by arranging interim employment. In
*Dow Chemical Co v Curtis,* 431 Mich 471; 430
NW2d 645 (1988), the Supreme Court discussed the
Legislature's reasons for adding the requalification
provision to § 29(8):

> 1974 PA 104 was enacted to restore the viability
> of the § 29(8) labor dispute disqualification in the
> wake of this Court's interpretation of that section
> in the context of a 1959 strike. . . .
> [In *Great Lakes Steel Corp v Employment Secu-
> rity Comm,* 381 Mich 249; 161 NW2d 14 (1968),
> the] Court interpreted then § 29 to mean that
> interim employment of even a very short duration
> was sufficient to terminate the labor dispute dis-
> qualification. The Court held that the only stan-
> dard to be applied with regard to such interim
> employment was that the claimants be "employ-
> ees" of "interim employing units." *Great Lakes,
> supra,* p 254. . . .
> . . . [F]ailure by the *Great Lakes* Court to inter-
> pret § 29 so as to require "bona fide" employment
> opened the door to artful dodging of the labor
> dispute disqualification. The MESC itself recognized
> this deficiency and urged adoption of criteria to
> measure the nature and extent of services re-
> quired to terminate the labor dispute disqualifica-
> tion. Thereafter, the Legislature enacted 1974 PA
> 104 which amended § 29(8) to supply objective
> criteria for evaluating the substantiality of "in-
> terim employment." [431 Mich 480-482.]

Claimants point to the last quoted sentence as

support for their position, adopted by the board of review majority and the circuit court, that the Legislature intended that the labor dispute disqualification be terminated once the two-pronged objective test explicitly set forth in § 29(8)—employment by an employer for two consecutive weeks and wages at least equal to the claimant's weekly benefit rate—has been satisfied. However, that argument overlooks the following observation by the *Dow Chemical* Court:

> As indicated by the collection of cases annotated in [Anno: *Unemployment compensation: Labor dispute disqualification as applicable to striking employee who is laid off subsequent employment during strike period*], 61 ALR3d 766, the majority of jurisdictions, even in the absence of statutory criteria, have insisted that a labor dispute disqualification is not terminated unless the new employment is undertaken in good faith and the former employment is severed. See, e.g., *Mark Hopkins, Inc v California Employment Comm,* 24 Cal 2d 744, 748-749; 151 P2d 229 (1944). The rationale for imposition of such standards is obvious:
>
> "To do otherwise would open the door to unlimited abuse. It would permit a striker to obtain any sort of temporary work and when it was terminated to apply for benefits for the loss of the temporary job even though the work stoppage [against the struck employer] still continued. [*Alin v Alaska Employment Security Comm,* 17 Alas 607, 615 (1958).] [431 Mich 480-481.]

We find this reasoning directly applicable to these cases. The purpose of 1974 PA 104 was to prevent striking workers from arranging sham work in order to dodge the labor dispute disqualification. *Dow Chemical, supra.* That purpose is con-

sistent with the overall purpose of the MESA to benefit only those who are involuntarily unemployed. *Baker, supra.* It would be wholly inconsistent with those goals to hold that the Legislature did not intend that the interim work necessary to requalify be undertaken in good faith. As these cases demonstrate, interpreting the requalification provisions of § 29(8) as allowing sham interim employment to terminate the labor dispute disqualification results in the payment of unemployment compensation benefits to persons who are voluntarily unemployed, in direct contravention of the MESA's purpose.

As explained in *Dow Chemical,* 1974 PA 104 was designed to close the loophole created by *Great Lakes Steel, supra,* by requiring striking workers to obtain "bona fide" interim employment in order to become qualified to receive unemployment compensation. See 431 Mich 481. Reduced to its simplest form, claimants' position is that the Legislature, in establishing the two-pronged test as part of § 29(8), intended to adopt a definition of "bona fide" interim employment that does not include "bona fides" as an element. We reject any such suggestion. 1974 PA 104 was enacted by the Legislature to restore the viability of the labor dispute disqualification, *Dow Chemical, supra,* p 480, not to codify a device for circumventing it.

We interpret the requalification provisions of § 29(8) as authorizing termination of the labor dispute disqualification only when a striking worker has obtained good-faith interim employment with an employer for at least two consecutive weeks and at a wage at least equal to the worker's weekly benefit rate. We therefore reverse the decisions of the board of review and the circuit

court finding claimant employees requalified to
receive unemployment compensation benefits.[1]
   Reversed.

R. L. OLZARK, J., concurred.

---

[1] We assume the Michigan Employment Security Commission, in
appropriate cases, will hereafter consider questions of good faith and
continuity of subsequent employment as part of its administrative
determination of requalification.

NEFF, J. *(dissenting).* The circuit court did not
err in affirming the decisions of the board of
review that the claimants were requalified to re-
ceive unemployment benefits because their labor
dispute disqualifications were terminated under
§ 29(8) of the Michigan Employment Security Act
(MESA), MCL 421.29(8); MSA 17.531(8). I would
affirm.

These cases involve the so-called "make work"
circumstances of thirteen claimants who worked
for individual employers for at least two weeks at
wages at least as high as their weekly benefit rates
for the employment involved in the labor dispute.[1]
The majority opinion engages in unnecessary stat-
utory construction to reach the conclusion that
these jobs did not satisfy the requirements for
requalification. No statutory construction is neces-
sary because the statute is, on its face, clear and
unambiguous and fully supports the decisions of
the board of review and the circuit court. Accord-
ingly, I respectfully dissent from the opinion of the
majority, which reverses with respect to these
claimants, and would affirm the requalification to
receive benefits.

### A

The MESA is a remedial act and its scheme is

---

[1] It should be noted that whether the jobs in question were merely
"make work" was disputed. Whether they were merely "make work,"
however, does not alter my analysis of this issue.

intended to safeguard the general welfare. *Tomei v General Motors Corp,* 194 Mich App 180, 184; 486 NW2d 100 (1992). It is entitled to liberal interpretation to give effect to its remedial policy. *Wohlert Special Products, Inc v MESC,* 202 Mich App 419, 424; 509 NW2d 825 (1993); *Tomei, supra.* Disqualifications are to be narrowly construed and, in the absence of provisions requiring disqualification, we will not judicially impose such requirements. *Johnides v St Lawrence Hosp,* 184 Mich App 172, 177-178; 457 NW2d 123 (1990); *Wilkerson v Jackson Public Schools,* 170 Mich App 133, 136; 427 NW2d 570 (1988). In my view, the majority imposes requirements not found in the statute.

In *Dow Chemical Co v Curtis,* 431 Mich 471, 480; 430 NW2d 645 (1988), our Supreme Court pointed out that 1974 PA 104 amended § 29(8) of the MESA to "restore the viability" of the labor dispute disqualification in light of the interpretation of that section in *Great Lakes Steel Corp v MESC,* 381 Mich 249; 161 NW2d 14 (1968). The amendment of § 29(8) was accomplished with an eye toward establishing objective criteria to evaluate interim employment. The amendment thereby supplied a means to determine whether employers are entitled to claim the bar of the disqualification.

B

The Legislature achieved its purpose by amending § 29(8) to require that two objective criteria be met in order to terminate the labor dispute disqualification for receipt of benefits: (1) the claimant must have employment for at least two consecutive weeks, and (2) have earned at least as much as the weekly benefit rate for the employment involved in the labor dispute. These two relatively

minimal requirements are clearly and succinctly established in the statute and nothing more is required. Statutory construction is unnecessary because the language is unequivocal and unambiguous. *Lorencz v Ford Motor Co,* 439 Mich 370, 376; 483 NW2d 844 (1992). We cannot and should not add requirements to the statute that are not found there.

The majority holding adds a subjective requirement to the objective requirements of the statute. The majority would require an inquiry into the motives and intentions of workers and their subsequent employers and only after such inquiry could the subsequent employment be judged to be bona fide employment. I disagree.

C

We need not go outside the statute to determine whether employment is bona fide because the statute defines both the term "employment," MCL 421.42(1); MSA 17.545(1), and the term "unemployed," MCL 421.48; MSA 17.552. The MESA serves as the basis for the definitions to be applied to determine statutory compliance. *Great Lakes, supra; Nordman v Calhoun,* 332 Mich 460; 51 NW2d 906 (1952). The claimants have met all of the *statutory* requirements of bona fide employment and any inquiry into the subjective elements of that employment is clearly outside the bounds of the statute and amounts to judicial legislation.

In amending § 29(8), the Legislature chose to adopt objective criteria for overcoming the labor dispute disqualification and to address the perceived potential for abuse pointed out in the *Great Lakes* decision[2] without reference to "good faith".

_____
[2] This case is still good law.

It just as easily could have adopted the subjective approach adopted here by the majority of this panel, but chose instead to limit the reach of the disqualification. As pointed out in the opinion of the circuit court, the establishment of strictly objective criteria serves the perfectly reasonable purpose and good public policy of avoiding litigating large numbers of unemployment compensation claims to resolve difficult and disputed questions of subjective intent. Given the remedial purpose of the statute and the potential to overload the system if subjective criteria are adopted, I believe that the majority errs in going where the Legislature has refused to tread. The circuit court judgment should be affirmed.