KALAMAZOO TANK & SILO COMPANY *v.* UNEMPLOYMENT
COMPENSATION COMMISSION.

1. UNEMPLOYMENT COMPENSATION—APPEAL FROM DECISION ON
QUESTION OF FACT—GREAT WEIGHT OF EVIDENCE.

   On appeal from the appeal board of the unemployment com-
   pensation commission the court may reverse decision of the
   board upon a question of fact only if it finds that the
   decision of the board is contrary to the great weight of
   the evidence (Act No. 1, § 38, Pub. Acts 1936 [Ex. Sess.],
   as amended by Act No. 364, Pub. Acts 1941).

2. SAME—PURPOSE OF ACT.

   The purpose of the unemployment compensation act was to
   provide for the benefit of persons unemployed through no
   fault of their own (Act No. 1, § 2, Pub. Acts 1936 [Ex.
   Sess.]).

3. SAME—PICKET LINE AROUND ADJACENT PLANTS.

   Where picket line was established by a union to which claim-
   ants did not belong, around both the plant where the
   picketeers worked as well as around adjacent plant at
   which claimants for unemployment compensation benefits
   worked, and while some of the employees in the latter
   plant crossed the picket line others did not do so because
   personal safety was threatened, employer owning struck
   plant was a subsidiary corporation to that owning adjacent
   plant where there was no labor dispute in progress and
   parent corporation did not offer claimants free and safe
   access to its plant, claimants were entitled to benefits since
   the situation confronting claimants was the creation of, and
   attributable to, such parent corporation and claimants were
   unemployed through no fault of their own (Act No. 1, § 2,
   [a], Pub. Acts 1936; § 29, as amended by Act No. 246, Pub.
   Acts 1943).

REFERENCES FOR POINTS IN HEADNOTES

[1] 42 Am. Jur., Public Administrative Law, § 245.
[2, 3] 48 Am. Jur., Social Security, Unemployment Insurance, and
Retirement Funds, §§ 35, 36.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted January 6, 1949. (Docket No. 28, Calendar No. 44,002.) Decided February 28, 1949.

Certiorari by Kalamazoo Tank & Silo Company, a Michigan corporation, to review award of appeal board of Michigan Unemployment Compensation Commission granting compensation to certain employees. Award affirmed. Plaintiff appeals. Affirmed.

*Paulson & Laing,* for plaintiff.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Laurence A. Price* and *Edward Coughlin,* Assistants Attorney General, for defendant Michigan Unemployment Compensation Commission.

*Rothe & Marston,* for defendant employees.

NORTH, J. The issue presented on this appeal as stated by appellant is:

"Were the union employee-claimants of appellant corporation disqualified from benefits under the Michigan unemployment compensation act, section 29 (a), between November 21, 1945, and January 25 (*sic* 23), 1946, because they did not cross the picket line at the plant of appellant corporation, which line was composed of employees of another corporation and who were members of another union?"

References herein to section 29 of the statute are to that section of Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 246, Pub. Acts 1943[*] (Comp. Laws Supp. 1945, § 8485-69, Stat. Ann. 1946

---

[*] See 3 Comp. Laws 1948, § 421.29.—REPORTER.

Cum. Supp. § 17.531). In part and so far as pertinent to decision herein, the statute reads:

"An individual shall be disqualified for benefits: (a) For the duration of his unemployment in all cases where the individual has either: (1) left his work voluntarily without good cause attributable to the employer."

Unless otherwise indicated we herein refer to the individual defendants, of whom there are said to be 53, as claimants or employees of plaintiff company. The material facts and the issue presented appear in the following decision of the referee, who affirmed the commission's holding that the claimants were not disqualified from receiving unemployment compensation between November 21, 1945, and January 23, 1946. We quote the referee's decision in part:

"At the above hearing (before the referee) it was testified that a labor dispute began on November 19, 1945, at the Riverside Foundry & Galvanizing Company, which plant is adjacent to the plant of the Kalamazoo Tank & Silo Company. On November 20, 1945, the employees of the Kalamazoo Tank & Silo Company still continued working, but that afternoon the employees of the Riverside Foundry & Galvanizing Company placed a picket line around both plants. On November 21, 1945, the employees of the Kalamazoo Tank & Silo Company came to work as usual and found a picket line of A. F. of L. workers from the Riverside Foundry & Galvanizing Company blocking the entrances to the Kalamazoo Tank & Silo Company plant. All but 8 or 10 of the 75 or 80 employees of the Kalamazoo Tank & Silo Company refrained from crossing the picket line on November 21.

"The employees of the Kalamazoo Tank & Silo Company are members of Local 3396 USW–CIO and it was testified that they were told by the pickets who were around the plant and who were members of A.

F. of L. that they would not be allowed through the picket line. Several conferences were held between the employer and a committee from the CIO employees of the Kalamazoo Tank & Silo Company, at which conferences the employer informed the men that there was work for them and that they could come to work if they wanted to. However, Peter G. Klok, president of Local 3396 USW–CIO, who testified for the claimants, stated that he attempted to cross the picket line on 2 occasions and talked to the captain of the picket line asking for permission to cross; that he was told emphatically 'no' on both occasions.

"The CIO organizers also contacted the A. F. of L. organizers for permission to enter the plant and such permission was denied to them. On one occasion when one of the foreman [foremen?], Fred Hayes, attempted to go through the picket line he was picked up bodily and put into his car and told that he had been saved from having his neck broken. Accordingly, the witness testified that he and the other workers deemed it unsafe to cross or attempt to cross the picket line.

"On behalf of the employer, records were presented that during the period of the labor dispute at the Riverside Foundry & Galvanizing Company, 17 workers did go through the picket line and worked during this period. Mr. Coombs, president of the Kalamazoo Tank & Silo Company, stated that at the last conference which he held with the union members of the CIO, he told the workers that he would secure an injunction or police protection for them if they decided to come in to work. However, he heard nothing further from the employees. * * *

"At or about the same time (January 25 [sic. 23], 1946), the labor dispute at Riverside Foundry & Galvanizing Company terminated and the picket line was withdrawn from the plant of the Kalamazoo Tank & Silo Company and all of the claimants returned to work on January 28, 1946.

"The file contains several statements from the employer to the effect that there is no dispute what-

soever between the Kalamazoo Tank & Silo Company and their employees relative to pay, hours of employment or any other matter, and it was admitted by representatives of the employer and of the claimants that the results of the labor dispute at the Riverside Foundry & Galvanizing Company had no effect upon the wages, hours of employment or working conditions of the employees of the Kalamazoo Tank & Silo Company.

"It was also stipulated at the hearing that the testimony of Peter G. Klok would be considered as representative of all of the claimants in the case, and that the decision rendered would be binding upon all the claimants as well as upon the employer with reference to all of the claimants. * * *

"At the hearing the attorney for the employer did not argue that these claimants were subject to disqualification under section 29(c) of the act inasmuch as there actually was no labor dispute existing in the establishment in which they are or were last employed. This referee is in full accord with this theory inasmuch as both sides have admitted that no labor dispute existed in the plant of the Kalamazoo Tank & Silo Company from November 21, 1945, to January 23, 1946. [But on this latter date labor trouble began in plaintiff's plant.] However, it was argued by the employer that these claimants should be disqualified under the provisions of section 29 (a) of the act inasmuch as they left their work voluntarily without good cause attributable to the employer.

"It is the contention of the employer that the work was available to the claimants but when they refused to cross the picket line or to take any action with reference to the removal of the picket line that they left their work voluntarily and are subject to disqualification under the provisions of section 29(a) of the act. This referee cannot agree with such contentions. The facts in this case with respect to the picket lines which were formed around the plant of the Kalamazoo Tank & Silo Company are not in

dispute. It is also clearly established that these pickets of the A. F. of L. who were employees of the Riverside Foundry & Galvanizing Company refused to permit employees of the Kalamazoo Tank & Silo Company, a separate corporation, to go through the picket line. It is true that some hardy employees apparently did brave the picket line and without regard to their safety, and worked during a part of the time that the pickets surrounded the plant of the Kalamazoo Tank & Silo Company. However, it is the opinion of this referee that if the employer was sincere in his wishes to have the employees of the Kalamazoo Tank & Silo Company return to work, he would have secured an injunction or attempted to secure an injunction to restrain the employees of the Riverside Foundry & Galvanizing Company from picketing a plant where no labor dispute was in progress.

"The duty of providing a safe ingress and egress to and from the plant of the Kalamazoo Tank & Silo Company rested upon the employer, and when the employer failed to provide such safe ingress and egress, he cannot claim that the employees are guilty of voluntary leaving if they refused to risk their safety by crossing the picket lines. Accordingly, it is the opinion of this referee that these claimants did not leave their work voluntarily without good cause attributable to the employer on or about November 21, 1945, and accordingly are not subject to disqualification under the provisions of section 29 (a) of the act."

The appeal board (one member dissenting) sustained the referee's decision; and on certiorari the circuit court also held in favor of claimants. It is from such holding that plaintiff herein has appealed. In his opinion the circuit judge noted, as must also be done by this Court, that on appeal from the appeal board the statute (Act No. 1, § 38, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts

1941 * [Comp. Laws Supp. 1945, § 8485–78, Stat. Ann. 1947 Cum. Supp. § 17.540]) provides that the "court may reverse such decision of said appeal board upon a question of fact only if it finds that said decision of the appeal board is contrary to the great weight of the evidence." In section 2 of the act † the legislature declared that it was "for the benefit of persons unemployed through no fault of their own."

The instant record clearly discloses that on the hearing before the appeal board an issue of fact was presented as to whether the claimants left their "work voluntarily without good cause attributable to the employer." It also appears from the record, as found by the referee and the appeal board, that the claimants herein "were not directly interested or involved in the labor dispute which began at the Riverside Foundry on November 19th." It may also be noted that the Riverside Foundry & Galvanizing Company was a subsidiary of the Kalamazoo Tank & Silo Company; and that at least to some extent the stock in each of these corporations was held by the same persons, some of whom were officers in each of these corporations. Under the record we are in accord with the following which we quote from the opinion of the circuit judge:

"The fact that 17 employees worked more or less irregularly, and only a few of them on production, does not establish that claimants had no reasonable cause to fear bodily harm. * * * They were denied safe access to the plant. They had nothing to do with or say about the location of the two plants (which were adjacent to each other) or the common parking space and entrance or the joint use of the property by the employees of both plants. The situ-

---

* 3 Comp. Laws 1948, § 421.38.—REPORTER.

† 3 Comp. Laws 1948, § 421.2 (Comp. Laws Supp. 1940, § 8485–42, Stat. Ann. 1947 Cum. Supp. § 17.503).—REPORTER.

ation that confronted them was the creation of and attributable to the plaintiff.

"It is true plaintiff offered to seek injunctive relief. Claimants did not refuse to cooperate. * * * They merely waited for plaintiff to act. At no time did plaintiff offer claimants the free and safe access to the plant to which they were entitled. Plaintiff, having created the unfortunate situation, owed the duty to claimants to alleviate it or at least to attempt to alleviate it. * * *

"The record does not justify an affirmative finding by the great weight or even a preponderance of the evidence that claimants left work voluntarily without good cause attributable to the employer."

The order entered in the circuit court affirming the decision of the appeal board is affirmed, with costs to appellees.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.