EMPIRE IRON MINING PARTNERSHIP v ORHANEN

EMPIRE IRON MINING PARTNERSHIP v ASMUND

Docket Nos. 103269-103271, 103301-103313. Argued January 14, 1997 (Calendar Nos. 4-5). Decided July 29, 1997.

Peter Orhanen and two other steelworker-employees of Empire Iron Mining and Tilden Mining Companies struck their employers. Each obtained interim employment through a union hiring hall from more than one employer, working at least two consecutive weeks and earning wages sufficient for requalification for unemployment benefits. Following reduction in work force or layoff by the interim employer, each applied to the Michigan Employment Security Commission for unemployment benefits. The MESC initially denied benefits, but, on redetermination, held that each had met statutory requirements for requalification. A hearing referee reversed. The Board of Review reversed the decision of the referee, stating that the phrase "an employer" found in MCL 421.29(8)(b); MSA 17.531(8)(b) can include multiple employers. The Marquette Circuit Court, Edward A. Quinnell, J., affirmed. The Court of Appeals, NEFF and R. L. OLZARK, JJ. (MACKENZIE, P.J., dissenting), affirmed (Docket Nos. 166054-166056). The employers appeal.

Donald A. Asmund and twelve other steelworker-employees of Empire Iron Mining and Tilden Mining Companies struck their employers. During the strike, each obtained interim employment from only one employer for at least two consecutive weeks and was paid wages at or above his benefit rate. When the interim employer laid off or reduced the hours of the worker, each applied for unemployment benefits. The MESC initially denied compensation, but changed its ruling on redetermination. A hearing referee reversed. The Board of Review reversed the decision of the referee, finding that each steelworker had met the necessary statutory requirements for requalification of benefits. The Marquette Circuit Court, Edward A. Quinnell, J., affirmed. The Court of Appeals, MACKENZIE, P.J., and R. L. OLZARK, J. (NEFF, J., dissenting), reversed, finding that § 29(8)(b) of the Michigan Employment Security Act contained an implied subjective criterion that interim employment be performed in good faith and that because each interim employment had been make-work, created solely for the purpose of

allowing the claimant to requalify for benefits, each worker was barred from receiving benefits (Docket Nos. 166041-166053). The steelworkers appeal.

In an opinion by Justice KELLY, joined by Chief Justice MALLETT, and Justices CAVANAGH and BOYLE, the Supreme Court *held*:

Only the requirements expressed in MCL 421.29(8)(b); MSA 17.531(8)(b) are necessary for requalification for unemployment benefits. The criteria for evaluating the substantiality of interim employment are objective. Inquiry into the subjective elements of a worker's employment is outside the bounds of the act. Wages paid to a striking worker by more than one employer in the qualifying period may be combined to entitle the worker to unemployment benefits.

1. Striking workers are disqualified from receiving unemployment benefits. Under § 29(8)(b), they may requalify for benefits through interim employment by performing services in employment for at least two consecutive weeks and earning wages each week equal to or greater than the actual or potential weekly benefit rate. The criteria for evaluating the substantiality of interim employment were held in *Dow Chemical Co v Curtis*, 431 Mich 471 (1988), to have been intended to be objective. The Court set no standard for determining an employee's subjective intentions. Inquiry into such intentions is outside the bounds of the act.

2. MCL 8.3 *et seq.*; MSA 2.212 *et seq.* provides that in interpreting statutes, every word indicating the singular may extend to the plural, and every word indicating the plural may be applied to the singular. Reading MCL 421.20(b); MSA 17.521(b) and MCL 421.50; MSA 17.554 in pari materia, "an employer" may be interpreted to mean multiple employers. To interpret "an employer" as used in § 29(8)(b) as incorporating the plural does not produce an absurd result. Rather, it complies with the public policy underlying the MESA: to protect a diligent worker against the vicissitudes of unemployment not caused by the worker. Workers who obtain interim employment when unemployed because of a labor dispute should not be penalized. In accordance with the explicit requirements of § 29(8)(b), to requalify for unemployment benefits a striker need not sever ties with a former employer, and the striker's later employment need not be permanent. Thus, wages paid to a worker by more than one employer in the qualifying period may be combined to permit the worker to requalify for unemployment benefits.

Justice RILEY, joined by Justices BRICKLEY and WEAVER, concurring in part and dissenting in part, stated that § 29(8) should be applied as written to require striking employees to work for a single employer for at least two consecutive weeks at a wage equal to or

greater than the weekly benefit rate received from the previous employer involved in the labor dispute before requalifying for unemployment benefits.

The labor dispute disqualification provision of § 29(8) is unambiguous. The Legislature's decision in § 29(8) to use the phrase "with an employer" indicates that it intended to create an objective requirement regarding the nature of the work. The statute also requires that the employee work two weeks with a single employer, that these two weeks be consecutive, and that the employee earn income equal to, or greater than, the weekly benefit rate with the previous employer during that period. By requiring that the employment of two consecutive weeks be with a single employer, the provision furthers the Legislature's wish to safeguard that any interim work be substantial by ensuring that the employee obtain a stable interim position, and not just makeshift work with various employers for any duration.

In *Orhanen*, the three employees did not terminate the labor dispute disqualification because they failed to work for two consecutive weeks with a single employer. In *Asmund*, the thirteen employees each satisfied the objective criteria of § 29(8) by working for a single employer for two consecutive weeks and, during that period, being paid a greater wage than that paid by the previous employer.

*Empire Iron Mining v Orhanen*, affirmed.

*Empire Iron Mining v Asmund*, reversed.

211 Mich App 130; 535 NW2d 228 (1995) affirmed.

211 Mich App 118; 535 NW2d 223 (1995) reversed.

*Clancey, Hansen, Chilman & Greenlee, P.C.* (by *Ronald E. Greenlee* and *W. Scott Chilman*), for plaintiff Empire Iron Mining Partnership.

*Martens, Ice, Geary, Klass, Legghio, Israel & Gorchow, P.C.* (by *Stuart M. Israel* and *Ronald C. Engler*), for the defendants.

Amicus Curiae:

*Clark Hill, P.L.C.* (by *Duane L. Tarnacki* and *J. Walker Henry*), for Michigan Manufacturers Association.

KELLY, J. This appeal is a consolidation of two cases. The Court is asked to determine what statutory requirements a striking worker must satisfy in order to requalify[1] for unemployment benefits under the Michigan Employment Security Act. MCL 421.29(8)(b); MSA 17.531(8)(b). In both these cases, the Michigan Employment Security Board of Review found that the sixteen striking employees requalified for unemployment compensation benefits. They had obtained interim jobs for a combined period of two weeks or more at statutorily prescribed wage-rates.

The employers in *Orhanen* appeal from a decision of the Court of Appeals that affirmed the Board of Review's grant of benefits to three employees.[2] Each employee had requalified by securing interim employment through a union hiring hall, which included jobs from more than one employer. The struck employers argue that it was error to hold that striking employees can earn requalification wages from multiple employers, as it encourages make-work and bad-faith interim employment.

In *Asmund*, employees appeal from a Court of Appeals decision that the award of unemployment compensation benefits to them was improper.[3] They assert that the appellate court erred as a matter of law by requiring "good faith" employment as a necessary element for requalification. The thirteen *Asmund* employees each worked for only one interim

---

[1] Requalify is a term used throughout the act. It refers to a process whereby claimants who have become ineligible for unemployment compensation benefits can begin receiving them.

[2] *Empire Iron Mining Partnership v Orhanen*, 211 Mich App 130; 535 NW2d 228 (1995).

[3] *Empire Iron Mining Partnership v Asmund*, 211 Mich App 118; 535 NW2d 223 (1995).

employer. However, the Court of Appeals found that they did not act in good faith in obtaining the interim employment.

We affirm the Court of Appeals decision in *Orhanen* and reverse the decision in *Asmund*.

I

INTRODUCTION

Eligibility of employees to receive unemployment compensation benefits and the bases of disqualification for those benefits are established by the MESA. MCL 421.28;   MSA 17.530   and MCL 421.29(8)(b); MSA 17.531(8)(b).[4] The issues presented on appeal involve the labor dispute disqualification provision, which states:

> An individual's disqualification imposed or imposable under this subsection is terminated if *the individual performs services in employment with an employer in at least 2 consecutive weeks falling wholly within the period of the individual's total or partial unemployment due to the labor dispute, and in addition earns wages in each of those weeks in an amount equal to or greater than the individual's actual or potential weekly benefit rate* with respect to those weeks based on the individual's employment with the employer involved in the labor dispute. [MCL 421.29(8)(b);   MSA 17.531(8)(b)   (emphasis added).]

In *Orhanen* and *Asmund*, the Court is asked to consider whether, in amending the disqualification provision of § 29(8)(b), the Legislature intended

---

[4] MCL 421.28;  MSA 17.530 sets forth the eligibility conditions for unemployment compensation benefits for an unemployed individual. MCL 421.29(8)(b);   MSA 17.531(8)(b)  sets forth the conditions for disqualification from benefits, which include participation in a labor dispute in actual progress.

(1) that a requirement of "good faith" be added to the listed objective criteria, and (2) whether it intended that the phrase "services in employment with an employer" be construed as requiring employment with a single employer.

We resolve the issues in favor of the employees. We find that the Board of Review's interpretations of § 29(8)(b) are in accord with the underlying purpose of the act itself.

II

THE "GOOD FAITH" CRITERION ISSUE
AND
THE "SINGLE EMPLOYER" ISSUE

Whether interim employment ends disqualification for unemployment benefits is dependent on the wording of the statute. *Thomas v Employment Security Comm*, 356 Mich 665; 97 NW2d 784 (1959). Because of conflicting Court of Appeals decisions, we are alerted to the fact that the statutory language of § 29(8)(b) may be subject to differing interpretations. We note that the plain wording of the statute does not express a "good faith" requirement. We note also that the phrase "an employer" may be interpreted in the plural as well as in the singular. Therefore, we consider whether "good faith" employment with a single employer was nonetheless intended by the Legislature.

We begin our analysis by examining the rationale underlying the MESA. Doing so sharpens our understanding of the circumstances surrounding its enactment. We review the prelegislative history and the motivations that induced enactment. Horack, *The dis-*

*integration of statutory construction*, 24 Ind L J 335, 338 (1949).

Next, we look to this Court's decisions that touch on the history and the circumstances surrounding § 29(8)(b). *Dow Chemical Co v Curtis*, 431 Mich 471, 480; 430 NW2d 645 (1988); *Great Lakes Steel Corp v Employment Security Comm*, 381 Mich 249, 254; 161 NW2d 14 (1968). Throughout our analysis, we bear in mind the underlying purpose of the act. *Dep't of Social Services v Brewer*, 180 Mich App 82, 84; 446 NW2d 593 (1989).

Once we have ascertained the Legislature's intent, we follow the primary rule of statutory construction for cases interpreting the MESA: a "liberal" construction to afford coverage and a "strict" construction to effect disqualification. See *Linski v Employment Security Comm*, 358 Mich 239; 99 NW2d 582 (1959). In order to comply with the public policy of the act, we recognize that this primary rule must prevail, despite any other conflicting rule. *People v Russo*, 439 Mich 584, 595; 487 NW2d 698 (1992). Other rules of construction serve only as guides to assist us in determining the intent with a greater degree of certainty. *Nolan v Dep't of Licensing & Regulation*, 151 Mich App 641, 648; 391 NW2d 424 (1986). We recognize that, as a general rule, deference is given to an administrative agency's decisions, provided that the agency's construction is consistent with the purpose and policies of the statute itself.[5]

---

[5] *Chevron, USA, Inc v Natural Resources Defense Council*, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984); *Ludington Service Corp v Acting Ins Comm'r*, 444 Mich 481; 511 NW2d 661 (1994). These cases discuss deference to an administrative agency's construction of a statute.

A

The MESA was enacted primarily for the benefit of persons involuntarily unemployed. Its purpose is to lighten the burden of economic insecurity on those who become unemployed through no fault of their own. *Kalamazoo Tank & Silo Co v Unemployment Compensation Comm*, 324 Mich 101, 107; 36 NW2d 226 (1949). The act specifies:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. [MCL 421.2; MSA 17.502.]

As the MESA is a remedial statute, it should be liberally construed to achieve its intended goal. *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 77; 503 NW2d 645 (1993). The precise language of the act springs from its underlying policy. The wording expresses our legislators' ideas, which, taken as a whole, become the basis for legislative intent.

As Justice MCALLISTER stated in his dissent in *Chrysler Corp v Smith*, 297 Mich 438, 475; 298 NW 87 (1941):

> The purpose of the legislation is to pay unemployment compensation benefits and to ameliorate the consequences of widespread unemployment. Such compensation is payable to unemployed workers with certain exceptions. To bring claimants within such exceptions, it is necessary to

strain at the meaning of the language of the statute and to
read into the act exceptions with regard to "integrated
industry," which are not mentioned anywhere in the legisla-
tion. To say the least, this would result in a narrow rather
than a liberal construction of the meaning of the statute. It
is most salutary, and in this case, in our opinion, conclu-
sive, to bear in mind that the purpose of the legislation is to
pay unemployment benefits, and not to refuse them; and a
liberal construction results in the allowance of the claims
rather than their denial.

We cited the MCALLISTER dissent with approval in *Park
v Employment Security Comm*, 355 Mich 103; 94
NW2d 407 (1959), which overruled *Chrysler Corp v
Smith, supra*. See also *Johnides v St Lawrence Hosp*,
184 Mich App 172; 457 NW2d 123 (1990); *Wilkerson v
Jackson Public Schools*, 170 Mich App 133, 136; 427
NW2d 570 (1988).

B

In 1968, this Court interpreted § 29(8)(b) of the
MESA, as then worded,[6] to mean that interim employ-
ment of even a short duration was sufficient to termi-
nate the disqualification. *Great Lakes, supra*. The
only standard to be applied with respect to interim
employment was that an employee be an "employee"
of "interim employing units."[7] *Id*.

The question in *Great Lakes* was whether the
phrase "establishment in which he is or was last
employed" would affect the employees' claims for

---

[6] The pertinent part of § 29(8) read: "(1) An individual shall be disquali-
fied for benefits: . . . (b) For any week with respect to which his total or
partial unemployment is due to a stoppage of work existing because of a
labor dispute in the establishment in which he is or was *last employed*."
(Emphasis added.)

[7] MCL 421.40; MSA 17.542 defines employing unit.

benefits. *Id.* at 253-254. If it does, then a layoff from an interim employment is not disqualifying under § 29(8)(b).

The *Great Lakes* Court did not define the necessary minimum length of interim employment. As a consequence, employees who had worked a few hours or days were able to avoid disqualification. Nor did the *Great Lakes* Court explicitly interpret § 29(8)(b) as requiring a subjective criterion of "good faith" employment. Thus, the MESC urged the Legislature to adopt specific criteria to measure the nature and extent of services required for employees to satisfy § 29(8)(b) of the MESA.[8]

After this Court decided *Great Lakes*, the Legislature enacted 1974 PA 104, which amended § 29(8)(b).[9] The amendment was accomplished with an eye toward establishing objective criteria in evaluating interim employment. It supplied a means to determine whether employers are entitled to claim the bar of the disqualification.

---

[8] Commentary submitted by the MESC to the Legislature in connection with SB 741, 1974 PA 104, dated March 15, 1974, included this recommendation:

> "It is . . . recommended that Section 29(8) be amended to provide that a labor dispute disqualification be terminated if an individual performs services in employment with an employer in at least two consecutive weeks falling wholly within the period of his total or partial unemployment due to the labor dispute and if in addition he earns wages in each of such weeks in an amount equal to or in excess of his actual or potential weekly benefit rate with respect to such weeks based on [sic] his employment with the employer involved in the labor dispute."

[9] It was further amended by 1994 PA 162 and 1995 PA 25. However, the Legislature has not changed any of the words and phrases of § 29(8)(b) since the 1974 amendment.

The Legislature was aware that the employees in *Great Lakes* had obtained interim employment with multiple employers collectively. In formulating the amendment, however, the issue whether interim employment with multiple employers satisfies the statutory requirement was not addressed. Rather, the Legislature dealt with the nature and the extent of the employment. It specified the amount of remuneration that an employee must earn (the nature) and the minimum period in which an employee must perform an interim employment (the extent).

In its first opportunity to review the amended language of § 29(8)(b), the Court in *Dow, supra,* traced the history of 1974 PA 104. It identified the Legislature's underlying intent and goal as being to "restore the viability" of the labor dispute disqualification provision of the MESA. The Court found that the Legislature intended to supply objective, as contrasted with subjective, criteria for evaluating the substantiality of interim employment. *Dow, supra* at 480, 482. It never addressed the subjective criterion for "good faith" employment.

The *Dow* majority's only comment on "good faith" employment was in reference to the history of the adoption of 1974 PA 104. It noted that a majority of jurisdictions had insisted that an employee's requalification for unemployment benefits requires that new employment be undertaken in good faith after the former employment has been severed.[10] *Id.* The purpose was to prevent a striker from abusing the system by obtaining a make-work temporary job and then apply-

---

[10] In Michigan, MCL 421.29(5); MSA 17.531(5) addresses the issue of leaving work to accept permanent full-time work with another employer.

ing for benefits while a strike was in progress. *Id.* But the *Dow* Court was not persuaded by those standards.

It could have (1) adopted a subjective standard for determining whether a good-faith effort had been made by an employee to obtain bona fide employment, or it could have (2) provided a standard by which to judge whether interim employment had been taken merely to bypass the labor dispute disqualification provision. However, it chose to set no standard for determining an employee's subjective intentions, holding instead that § 29(8)(b) contained objective criteria. *Id.* at 482.[11]

We subscribe to and follow the reasoning of the *Dow* Court. We will not judicially legislate by adding language to the statute. *In re Marin,* 198 Mich App 560, 564; 499 NW2d 400 (1993).

C

FACTS AND APPLICATION

*EMPIRE IRON MINING v ASMUND*
AND
*EMPIRE IRON MINING v ORHANEN*

The sixteen employees in these cases are members of the United Steelworkers Union. From July 31, 1990, to December 1, 1990, they engaged in a strike against their employers, Empire Iron and Tilden Mining Companies. During the strike, all sixteen obtained interim employment.

In *Asmund,* the employees obtained interim employment from one employer, whereas the employees in *Orhanen* obtained their interim employment

---

[11] There have been no claims of misrepresentation of facts in either of these cases. Such claims would be governed by MCL 421.29(8), 421.54a; MSA 17.531(8), 17.558(1).

through a union hiring hall. The jobs secured by the union hiring hall were from multiple employers.

Nevertheless, in both cases, each employment lasted at least two consecutive weeks, with each interim employer paying the employee wages at or above his benefit rate. In time, when the interim employers laid off or reduced the hours of the employees, each steelworker applied for unemployment compensation benefits.

The Michigan Employment Security Commission, having initially denied each worker's application for benefits, changed its rulings on redetermination. The mining companies appealed from that decision to an MESC referee.

The referee held a hearing on each claim and reversed the MESC's decisions. The steelworkers then appealed to the Board of Review, which, in turn, reversed the referee's decisions, finding that each steelworker had met the necessary statutory requirements for requalification of benefits. MCL 421.29(8)(b); MSA 17.531(8)(b). The circuit court affirmed the Board of Review. The mining companies then appealed to the Court of Appeals.

1

THE "GOOD FAITH" CRITERION ISSUE

In *Asmund*, the companies argued that § 29(8)(b) contained an implied subjective criterion that interim employment be performed in "good faith." The Court of Appeals agreed.

It reasoned that each interim employment had been "make-work," created solely for the purpose of allowing the employee to requalify for benefits. Consequently, each worker was barred from receiving

benefits. *Asmund, supra* at 121. The steelworkers appealed to this Court, which granted leave.

The steelworkers in *Asmund* argue that the Legislature achieved its purpose by amending § 29(8)(b). They contend that only the requirements expressed in the statute are necessary for requalification. Therefore, they conclude, nothing more should be required. We agree. We cannot read requirements into a statute that the Legislature did not put there.[12]

In defending their position, the mining companies in *Asmund* rely on *Alin v Alaska Employment Security Comm*, 17 Alas 607, 615 (1958). They advance *Alin* as authority for the proposition that a subjective criterion of "good faith" employment is necessary in evaluating interim employment.

In *Alin*, the court was asked to interpret the phrase "last employed."[13] It explained the rationale for its conclusion, stating:

> Where the act itself, as here, does not define the meaning of the term "last employed" it would seem that the commission could properly construe it to mean in effect "last *regularly* employed." To do otherwise would open the door to unlimited abuse. It would permit a striker to obtain any sort of temporary work and when it was terminated to apply for

---

[12] Judicial construction is usually not permitted where a statute is clear and unambiguous on its face. However, we undertake interpretation of the statutory language in this case to show that a plain reading of the statute will not produce an absurd result. See *McKibbin v Corporation & Securities Comm*, 369 Mich 69; 119 NW2d 557 (1963).

[13] The Court in *Great Lakes* dealt with this issue as well. However, the Court refused to read "regularly" into the statute. Rather, the Court held that a claimant's interim employer became the "establishment in which he is or was last employed." To hold otherwise, the Court stated, would render purposeless the disqualifying provisions of § 29(1)(b). *Id.* at 253-254.

benefits for the loss of the temporary job even though the
work stoppage still continued. [Emphasis added.]

The *Alin* court judicially inserted the word "regularly"
when interpreting "last employed."

Although this Court has not been asked to interpret
the phrase "last employed," the mining companies
have nonetheless asked this Court to follow the *Alin*
court. They seek judicial imposition of a subjective
criterion of "good faith" when an employee has
obtained interim employment during a labor dispute.
We avoid inserting words in statutes unless necessary
to give intelligible meaning or to prevent absurdity.
See *McKibbin v Corporation & Securities Comm*,
369 Mich 69; 119 NW2d 557 (1963); *Lawrence Baking
Co v Unemployment Compensation Comm*, 308 Mich
198; 13 NW2d 260 (1944).

Because of our reluctance to insert words into stat-
utes, we will not read into § 29(8)(b) a subjective
intent requirement of good faith on the part of
employees. Given the remedial purpose of the MESA
and the potential to overload the system if subjective
criteria were adopted, we will not tread where the
Legislature has refused to go. Inquiry into the subjec-
tive elements of an employee's employment is outside
the bounds of the act.[14]

---

[14] MCL 421.32(a); MSA 17.534(a) and MCL 421.46; MSA 17.550 set
forth the steps the commission must follow when an employee seeks
redetermination. The commission has broad statutory authority in review-
ing a claimant's eligibility for benefits, thus allowing it to consider false
statements, nondisclosures, misrepresentations of material facts, and
fraud. This opinion is not intended to restrict the commission's statutory
authority.

2

## THE "SINGLE EMPLOYER" ISSUE

In *Orhanen*, the mining companies argued that the plain wording of the statute permits consideration of wages paid by only one employer in determining an employee's eligibility for benefits. Under the companies' reading of the statute, then, the steelworkers could not qualify for benefits. A single employer did not pay them enough wages in at least two consecutive weeks of interim employment to meet the requirements of § 29(8)(b).

Employees Peter Orhanen, Gary Pyykkonen, and Dale A. Toivonen held union millwright cards and secured interim employment with at least three different companies through their union hiring hall.[15] The employments were transient, involving only one or two long shifts with any one employer. The issue is whether wages paid to the worker by more than one employer in the qualifying period can be combined to entitle the worker to unemployment benefits. We rule that they can.

Initially, the phrase "an employer" suggests that the plain language of the termination provision requires that interim employment be with a single employer, only. We cannot interpret § 29(8)(b) apart from other sections of the statute "without constant reference to the whole." *Plymouth Stamping v Lipshu*, 436 Mich 1, 17; 461 NW2d 859 (1990).

We begin with the requirements that appear in the statute. They establish that an individual can requalify

---

[15] We consider employment through a union hiring hall to be arms-length employment and a legitimate manner of obtaining interim employment.

for unemployment benefits by (1) performing services in employment for at least two consecutive weeks, and (2) earning wages each week equal to or greater than the actual or potential weekly benefit rate. In defining and calculating the "benefit rate," we are required to examine other sections of the act for guidance.[16] Thus, we review MCL 421.20; MSA 17.521 and MCL 421.50; MSA 17.554, which set forth the standard for determining such rate.

Specifically, MCL 421.20(b); MSA 17.521(b) provides in pertinent part:

> If the individual earned credit weeks from more than 1 employer, a separate determination shall be made of the amount and duration of benefits based upon the total credit weeks and wages earned with each employer.

Finally, in order to establish the meaning of a "credit week," we rely on MCL 421.50; MSA 17.554. That section not only defines "credit week," it refers to wages earned from more than one employer. It states:

> (1) If an individual earns wages from more than 1 employer in a credit week, that week shall be counted as 1 multiemployer credit week and shall be governed by the provisions of section 20(e) . . . .
>
> *        *        *
>
> [2](a) First, all credit weeks which are not multiemployer credit weeks and which were earned with employers not involved in a disqualifying act or discharge under section

---

[16] Moreover, to quote Justice RILEY as she correctly stated in *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 155; 545 NW2d 642 (1996): " 'It is fundamental that adoption of language requires adoption of construction. Identical language should certainly receive identical construction when found in the same act.' "

29(1), and all credit weeks earned with an employer involved in such a disqualifying act or discharge which were earned subsequent to the last act or discharge in which the employer was involved, shall be counted in inverse order of most recent employment with each employer. [MCL 421.50(b); MSA 17.554(b).]

Thus, reviewing the statute as a whole, we conclude that "an employer" may be interpreted as meaning multiple employers.

Statutes in pari materia are those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose. It is the rule that in construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although enacted at different times, and containing no reference one to the other. [*Detroit v Michigan Bell*, 374 Mich 543, 558; 132 NW2d 660 (1965).]

The rule that statutes that relate to the same subject matter should be read, construed, and applied together to distill the Legislature's intention is of paramount importance in this case.

Next, examining other courts' decisions, we have found only one that has specifically addressed whether the phrase "an employer" in a statute refers to more than one employer. *Taminski v Administrator, Unemployment Compensation Act*, 168 Conn 324; 362 A2d 868 (1975). The Connecticut Supreme Court held in *Taminski* that wages paid to an unemployment compensation claimant by more than one employer may be combined in determining eligibility for unemployment benefits. *Id.* at 327. In addition, it

ruled that the word "an" as used in the phrase "an employer" in its statute is not limited to "one."[17] *Id.*

The *Taminski* court stated that its statute did not support the limited interpretation placed upon it. It recognized that its statute was remedial in nature, and therefore, held that its provisions were to be liberally construed for its beneficiaries in order to achieve its purpose. *Id.* We find the *Taminski* court's rationale persuasive.

Finally, the Michigan Legislature has provided us with the necessary rules for making this statutory interpretation. MCL 8.3 *et seq.*; MSA 2.212 *et seq.* They specify that every word indicating the singular may extend to the plural, and every word indicating the plural may be applied to the singular. MCL 8.3b; MSA 2.212(2). See also *In re Detroit*, 261 Mich 278; 246 NW 51 (1933).

The mining companies urge that the rules, being permissive in nature, should be applied only where no rationale exists for restricting or extending the express wording of the statute. We disagree. To interpret "an employer" as used in § 29(8)(b) as incorporating the plural does not produce an absurd result. *Rowell v Security Steel Processing Co*, 445 Mich 347;

---

[17] This Court was asked to decide whether the phrase "an insured" referred to only one or to all insureds in *Allstate Ins Co v Freeman*, 432 Mich 656; 443 NW2d 734 (1989). We adopted reasoning enunciated by the Ninth Circuit in *Allstate Ins Co v Gilbert*, 852 F2d 449 (CA 9, 1988).

The *Gilbert* court rejected a plaintiff's argument that the phrase " 'an insured person' connotes the singular, not the plural . . . ." *Id.* at 454. By adopting the Ninth Circuit's logic, we held that "an insured" refers to any or all insureds, that "an" can connote the plural as well as the singular. *Freeman, supra* at 694. Justice RILEY, writing for the majority, stated: "Strong public policy supports this decision. Adherence to a correct usage of the English language . . . promotes a uniform, reliable, and reasonable foundation . . . ." *Id.* at 699.

518 NW2d 409 (1994). Our construction complies with the public policy underlying the MESA: to protect a diligent worker against the vicissitudes of unemployment not caused by the worker.[18]

With that in mind, we conclude that workers who obtain interim employment when unemployed because of a labor dispute should not be penalized. We decline to interpret the statute as disallowing requalification because workers took interim employment from more than one employer. We recognize that (1) the striker need not sever his ties with his former employer and (2) the striker's later employment need not be permanent in nature.[19] These two criteria accord with the explicit requirements of § 29(8)(b).

---

[18] The MESC itself has interpreted the language of the statute. In deferring to its decision, we find support in *Unemployment Compensation Comm of Alaska v Aragon*, 329 US 143; 67 S Ct 245; 91 L Ed 136 (1946). The United States Supreme Court held:

> To sustain the Commission's application of [a] statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. The "reviewing court's function is limited." [*Id.* at 153.]

[19] Some courts have held that the labor dispute disqualification imposed by the statute cannot be terminated by the subsequent acceptance of temporary work; only permanent employment, accepted with an intent to completely sever the relationship with the prior employer, will suffice to end the disqualification. *Tri-State Motor Transit Co v Industrial Comm, Div of Employment Security*, 509 SW2d 217 (Mo, 1974); *In re Hatch*, 130 Vt 248; 290 A2d 180 (1972); *E I Du Pont de Nemours & Co v Dale*, 271 A2d 35 (Del, 1970); *Sprague & Henwood, Inc v Unemployment Compensation Bd of Review*, 207 Pa Super 112; 215 A2d 269 (1965); *Labinsky v Florida Industrial Comm*, 167 So 2d 620 (Fla App, 1964); *Alin v Alaska Employment Security Comm, supra; New Jersey Zinc Co v Bd of Review*, 25 NJ 235; 135 A2d 496 (1957); *Gentile v Dir of Div of Employment Security*, 329 Mass 500; 109 NE2d 140 (1952); *Mark Hopkins, Inc v California Employment Comm*, 24 Cal 2d 744; 151 P2d 229 (1944); *Sprague v MacPherson*, 142 Mont 581; 386 P2d 572 (1963).

SUMMARY

We assume that the Legislature was aware of the administrative interpretations of the MESA when it amended § 29(8)(b).[20] Additionally, we recognize that the questions presented involve specific applications of broad statutory terms in proceedings in which an agency administering the statute made the initial determination.

We see nothing to require substituting a different construction from that crafted by the commission entrusted with the responsibility of administering the statute. We find that the Board of Review's decisions in *Asmund* and *Orhanen* are not contrary to the intent of the Legislature and comply with the underlying rationale of the act itself. Therefore, we affirm the decision of the Court of Appeals in *Orhanen* and reverse the decision in *Asmund*.

MALLETT, C.J., and CAVANAGH and BOYLE, JJ., concurred with KELLY, J.

---

[20] The commentary submitted by the MESC to the Legislature in connection with the proposed amendment of § 29(8)(b) stated:

In *Great Lakes Steel Corporation v Michigan Employment Security Commission* (1968), 381 Mich 249, the Supreme Court of Michigan held that a claimant shall be deemed to have terminated a labor dispute disqualification imposed under Section 29(8) by performing services subsequent to the beginning of the labor dispute in employment for remuneration with an employer.

The Court however made no finding as to what amount of remuneration must be received by the claimant in order to terminate the labor dispute disqualification. However, it appears that in the *Great Lakes Steel* case that all of the individuals worked with the interim employees [sic] from several days to several weeks and that the amount of remuneration that the individuals received was at least equal to the amount that would have been the individual's benefit rate in such week of interim employment if he had been eligible and qualified in all respects.

RILEY, J. (*concurring in part and dissenting in part*). Because I believe the statute should be applied as it was written, I respectfully dissent from the majority's decision in *Empire Iron Mining v Orhanen* and concur only in the result of the majority in *Empire Iron Mining v Asmund*. I am convinced that the labor dispute disqualification provision, MCL 421.29(8); MSA 17.531(8), is unambiguous in requiring an employee to find work with a single employer for at least two consecutive weeks at a wage equal to or greater than his weekly benefit rate with his prior employer before requalifying for unemployment compensation benefits. Hence, I would reverse the decisions of the Court of Appeals, the circuit court, and the Board of Review of the Michigan Employment Security Commission in *Orhanen* and reinstate the MESC's referee decisions because the three employees, by their own admission, did not work for at least two consecutive weeks with a single employer. In *Asmund*, I agree with the majority that the statute does not include a good-faith requirement, but I disagree with some of its analysis that suggests that the statute is ambiguous. I agree that this Court should reverse the Court of Appeals decision, but I concur in the result only.

### I. *EMPIRE IRON MINING v ORHANEN*

The rules of statutory construction are well established. This Court begins by examining the language of the statute itself. See *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). Where the language of the statute is unambiguous, the plain meaning reflects the Legislature's intent and this Court applies the statute as written. Judicial con-

struction is not permitted. *Id.* Although this Court
affords an agency some deference in interpreting a
statute that it executes, the agency's interpretation is
not binding on this Court and cannot be used to over-
come the statute's plain meaning. *Ludington Service
Corp v Acting Ins Comm'r*, 444 Mich 481, 505; 511
NW2d 661 (1994). Section 29(8) provides that an
employee is disqualified from receiving unemploy-
ment compensation benefits during a week in which
that employee is unemployed because of a labor dis-
pute. An employee may, however, end this
disqualification:

> An individual's disqualification imposed or imposable
> under this subsection is terminated if the individual per-
> forms services in employment *with an employer* in at least
> 2 consecutive weeks falling wholly within the period of the
> individual's total or partial unemployment due to the labor
> dispute, and in addition earns wages in each of those weeks
> in an amount equal to or greater than the individual's actual
> or potential weekly benefit rate with respect to those weeks
> based on the individual's employment with the employer
> involved in the labor dispute. [MCL 421.29(8)(b);  MSA
> 17.531(8)(b)  (emphasis added).]

The majority concludes that an employee may ter-
minate his disqualification even if he does not work
for two consecutive weeks with a single employer.
*Ante*, p 429. The opinion concludes, without expressly
stating, that the statute's language is ambiguous. I dis-
agree with this approach because I believe that the
statute, examined by itself, is unambiguous. In using
the phrase "with an employer," the Legislature has
required that an employee work for two weeks with *a
single employer* in order to requalify for unemploy-

ment compensation benefits during a labor strike. I see no need for judicial construction.

The majority relies on other sections of the act, specifically MCL 421.20; MSA 17.521 (determining how benefits shall be paid) and MCL 421.50; MSA 17.554 (defining "credit week"), to support its claim that "an employer" in § 29(8) may refer to multiple employers. See *ante*, pp 426-427. However, the specific sections the majority quotes, which indicate that an employee may receive benefits for a week in which he worked for multiple employers, do not govern the circumstance in which an employee attempts to terminate his disqualification under § 29(8) during a labor strike through interim work. Subsection 29(8) specifically disqualifies an employee for unemployment benefits during a labor dispute and identifies the requirements that he must meet to terminate it. The majority ignores the plain language of § 29(8), which requires that the interim employment be "with an employer," and instead cites other provisions of the act that do not apply in this circumstance.

The majority secondly examines a foreign jurisdiction's treatment of a similarly worded statute in support of its conclusion. See *ante*, pp 427-428, relying on *Taminski v Administrator, Unemployment Compensation Act*, 168 Conn 324; 362 A2d 868 (1975). Finally, the majority, after its examination of the Connecticut case, relies on the Michigan statutory rule of construction, MCL 8.3b; MSA 2.212(2), for support in reading "an employer" to mean "any number of employers." MCL 8.3b; MSA 2.212(2) provides in pertinent part:

> Every word importing the singular number only *may* extend to and embrace the plural number, and every word

importing the plural number *may* be applied and limited to
the singular number. [Emphasis added.]

The majority, by applying this permissive inference to
this statute, renders the unambiguous language of the
statute ambiguous. The purpose of the statutory rules
of construction is to enhance the Court's ability to
interpret the legislative intent when a statute is
unclear, not to obscure what is otherwise clear. The
Legislature has expressly reserved, under MCL 8.3;
MSA 2.212, the application of these statutory rules to
cases in which the Legislature's intent is not manifest,
i.e., when the statutory language is ambiguous:

> In the construction of the statutes of this state, the rules
> stated in sections 3a to 3w shall be observed, *unless such
> construction would be inconsistent with the manifest
> intent of the legislature.* [Emphasis added.]

Consequently, I would limit the application of the
statutory rules of construction, listed in §§ 3a to 3w,
to statutes in which (1) the plain language does not
make the Legislature's intent manifest, or, in other
words, the statute is ambiguous or (2) the statute's
language would otherwise create an absurd result.
See *Crowley, Milner & Co v Macomb Circuit Judge*,
239 Mich 605, 615-616; 215 NW 29 (1927) ("The stat-
ute [that the singular number may embrace the plural
number] is for use and has been employed to avert
*ridiculous* situations" [emphasis added]). The rule of
statutory construction in MCL 8.3b; MSA 2.212(2)
should not be applied to the unambiguous language
of § 29(8) because the plain language does not create
an absurd result.

The plain meaning of the statute as written is consistent with this Court's explanation in *Dow Chemical Co v Curtis*, 431 Mich 471, 481, n 10; 430 NW2d 645 (1988), of the Legislature's intent in enacting this provision. In *Dow, supra* at 482, we concluded that the Legislature intended to ensure that there were "objective criteria" for evaluating "the *substantiality* of 'interim employment'" necessary to requalify an employee for unemployment compensation benefits during a labor strike. (Emphasis added.) This Court, in *Dow*, was evaluating the relevant statutory language in § 29(8), which, the Court noted, had been enacted "to restore the viability" of the labor dispute disqualification. *Id.* at 480. The Legislature was attempting to remedy the deficiency created by this Court in *Great Lakes Steel Corp v Employment Security Comm*, 381 Mich 249; 161 NW2d 14 (1968), when we interpreted the predecessor of § 29 to allow work of "even a very short duration" to end the labor dispute disqualification. See *Dow, supra* at 480. Hence, the Legislature adopted the objective criteria outlined in § 29(8). *Id.* at 481-482.[1] See also *ante*, pp 418-421, for a history of the provision.

---

[1] The Court in *Dow, supra* at 481, n 10, noted that the language at issue was taken from a recommendation from the MESC to increase the nature and extent of interim work that terminates the labor dispute disqualification:

"It is therefore recommended that Section 29(8) be amended to provide that a labor dispute disqualification be terminated if an individual performs services in employment *with an employer* in at least two consecutive weeks falling wholly within the period of his total or partial unemployment due to the labor dispute and if in addition he earns wages in each of such weeks in an amount equal to or in excess of his actual or potential weekly benefit rate with respect to such weeks based on his employment with the employer involved in the labor dispute." [Emphasis added.]

In the context of the legislative history, the Legislature's decision in § 29(8) to use the phrase "with an employer" indicates that the Legislature intended to create an objective requirement regarding the nature of the work. The majority fails to provide any explanation for the reason that this critical phrase appears in the statute. The statute also requires that the employee work two weeks with the single employer, these two weeks be consecutive, and the employee earn income equal to, or greater than, his weekly benefit rate with his previous employer during that period. By requiring that the employment of two consecutive weeks be with a single employer, this provision furthers the Legislature's wish to safeguard that any interim work be "substantial[]," see *Dow, supra* at 482, by ensuring that the employee obtain a stable interim position, and not just makeshift work with various employers for any duration. The requirement that there be only a single employer guarantees that the employee achieved a modest measure of stability in the interim employment before seeking unemployment benefits when that work ceased. Because there is no dispute that these three employees did not work for two weeks with a single employer, I would reinstate the referee decisions that this interim employment did not end the labor dispute disqualification.[2]

## II. *EMPIRE IRON MINING v ASMUND*

In *Asmund*, I agree that there is no good-faith requirement in § 29(8). The majority's analysis, "by examining the rationale underlying the [Michigan

---

[2] There is no indication that the MESC Board of Review was relying on a longstanding interpretation of the act in reversing the referee decisions.

Employment Security Act]," and by considering the "history and circumstances surrounding § 29(8)(b)," *ante,* pp 415-416, suggests that the statute's language is ambiguous. Although the opinion claims that it is only engaging in judicial construction in footnote 12 on page 423 to demonstrate that the plain meaning of the statute will not produce an absurd result, the rest of the opinion's analysis suggests otherwise. I believe that the statute unambiguously fails to include a good-faith requirement. Hence, I do not think there is any reason to engage in judicial construction. See *Tryc, supra* at 135. I also agree with the majority that an examination of the legislative history of the statute reveals that the Legislature did not intend to create a good-faith requirement, but instead only established objective criteria. See *ante,* pp 422-423. This judicial construction is only necessary, in my opinion, for demonstrating that the statute's plain meaning does not create an absurd result.

In examining the language of § 29(8), I would hold that the statute requires an employee to prove three points before terminating the labor dispute disqualification: he must prove that (1) he has worked for two consecutive weeks, (2) with the same employer, and (3) has earned a wage equal to or greater than the actual or potential benefit rate from his previous employer. For these thirteen employees in *Asmund,* each employee satisfied the objective criteria of § 29(8) by working for a single employer for two consecutive weeks and, during that period, was paid a greater wage than he was paid by his previous employer. I concur in the majority's decision to reverse the Court of Appeals decision.

### III. CONCLUSION

I would reverse the Court of Appeals decision in *Orhanen* and reinstate the decision of the MESC referee that the three employees did not terminate the labor dispute disqualification under § 29(8) because they failed to work for two consecutive weeks with a single employer. Because I agree that the thirteen employees met the objective criteria of § 29(8), I concur in the majority's decision in *Asmund* to reverse the Court of Appeals decision and reinstate the MESC Board of Review's decision to terminate the labor dispute disqualification.

BRICKLEY and WEAVER, JJ., concurred with RILEY, J.