Kelly, J.
I respectfully disagree with the majority’s conclusion that plaintiff’s unemployment compensation benefits should be eliminated because she has received retirement benefits as defined by the *326 Michigan Employment Security Act (mesa). MCL 421.1 et seq. The majority reads the relevant statutory language as unambiguous, despite strong indications to the contrary. It fails to consider the entirety of the sentence in which the word “liquidation” appears and disregards interpretive letters that define “receive.” In so doing, the majority misconstrues the meaning of MCL 421.27(f)(4)(a).
The Court of Appeals advanced the correct interpretation. I would affirm its holding that plaintiff did not receive a “retirement benefit” within the meaning of the act and that her unemployment compensation benefits should not be eliminated as a consequence.
I. STATUTORY CONSTRUCTION
When construing a statute, our primary goal is to ascertain and give effect to the intent of the Legislature in writing it. Turner v Auto Club Ins Ass’n, 448 Mich 22, 27; 528 NW2d 681 (1995). While judicial interpretation usually is not permitted where statutory language is clear, a literal construction must yield when it produces absurd and unjust results. See Salas v Clements, 399 Mich 103, 109; 247 NW2d 889 (1976). Judicial interpretation is also appropriate when reasonable minds can differ regarding the meaning of the language. Adrian Sch Dist v Michigan Pub Sch Emp Retirement System, 458 Mich 326, 332; 582 NW2d 767 (1998). If judicial interpretation is necessary, legislative intent is determined by giving the statutory language a construction that is both reasonable and that best accomplishes the purpose of the statute. Frankenmuth Mut Ins Co v Marlette Homes, Inc, 456 Mich 511, 515; 573 NW2d 611 (1998).
*327 A. THE TERM “LIQUIDATION”
The MESA allows unemployment benefits payable under it to be reduced or eliminated where a claimant is receiving a, “retirement benefit.” MCL 421.27(f)(1). It defines that term as “a benefit, annuity, or pension of any type . . . payable [when] . . . the individual was retired from employment.” MCL 421.27(f)(4)(a)(ii). But the act expressly excludes as a retirement benefit any amounts paid to individuals “in the course of liquidation of a private pension or retirement fund because of termination of the business or of a plant or department of the business of the employer involved . . . .’’Id.[1]
In this case, plaintiff lost her job with defendant because defendant closed the facility where she worked. The question is whether her retirement funds fall within the statutory definition of “retirement benefit” or within the exception.
The expression “liquidation of a private pension or retirement fund” in § 27(f)(4)(a)(ii) could mean a distribution of all pension monies that an employer holds for all its employees. Defendant here maintains *328 that it did not liquidate its entire pension fund monies when it closed the facility where plaintiff worked and that the fund continues to exist. Under this interpretation and in this factual situation, plaintiff’s pension distribution would constitute retirement benefits and she could not be paid unemployment benefits.
On the other hand, the clause “liquidation of a private pension or retirement fund” could mean a distribution of all pension monies that an employer holds for one or more but not all of its employees.[2] As noted by the majority, the word “liquidate” has many definitions, including “to settle or pay (a debt)” and “to convert (inventory, securities, or other assets) into cash.”[3] Applying that definition here, defendant “liquidated” plaintiff’s retirement fund when it distributed the entire contents and closed the account, settling its debt to plaintiff and converting her pension into cash. Hence, the distribution would not constitute retirement benefits and plaintiff could draw unemployment benefits.
The majority offers no persuasive reasoning to support its conclusion that the “more pertinent” definition of “liquidate” is that contemplating the elimination of all corporate pension assets. The mere fact that it prefers this to a definition more favorable to plaintiff has no bearing on what the Legislature intended “liquidate” to mean. The varied definitions of the word leave room for reasonable minds to differ. It is inescapable that the statutory language is ambiguous.
*329 The majority’s interpretation, that “hquidation” means a distribution of all pension monies held for all its employees, produces unconscionable results. For example, in this case, Ameritech would never “liquidate” all its pension fund monies by shutting down one or some of its facilities. Hence, no employee in plaintiff’s situation could ever collect unemployment benefits. As an extreme example, if defendant discharged all its employees, it could distribute all but one dollar of the funds in the pension fund. Then, the fund would not have been liquidated under the majority’s reading because all the assets would not have been distributed. In so doing, defendant could reduce or eliminate all its employees’ unemployment benefits. The Legislature could not have intended the result in either example.
The practical implications of the majority’s reading of § 27(f)(4)(a)(ii) are enormously detrimental to employees like plaintiff. During plaintiff’s hearing before the Michigan Employment Security Board of Review, defendant’s human resources manager testified that there is a single common trust fund for pension monies to which both defendant and Michigan Bell contribute. Absent closure of the entire corporation and all its pension funds, whenever defendant shuts down one facility, it will always escape paying unemployment benefits to the employees who worked there.
The majority distorts the facts of this case by portraying plaintiff’s acceptance of her pension funds as a choice. Defendant offered plaintiff two other jobs in its corporation. However, both were located approximately two hours from her residence. When plaintiff declined them because the commute would be unreasonable, defendant distributed her retirement funds. *330 She did not have the option to leave them in defendant’s trust fund. She was obliged to have them rolled into an IRA or paid to her in a monthly annuity.[4] It is in light of these facts that defendant believes the funds were not liquidated within the meaning of MCL 421.27(f)(4)(a)(ii).
My construction of § 27(f)(4)(a)(ii) is in keeping with the fact that the mesa is a remedial statute. As such, by principle, it should be liberally construed to afford benefits to a displaced employee. Empire Iron Mining Partnership v Orhanen, 455 Mich 410, 415-416; 565 NW2d 844 (1997). My construction also furthers the purpose of the act, which is “to lighten the burden of economic insecurity on those who become unemployed through no fault of their own.” Id. at 417.
B. THE PHRASE “IS RECEIVING OR WILL RECEIVE”
I also disagree with the majority’s rejection of the Court of Appeals finding that, within the meaning of MCL 421.27(f)(1), the funds were not “received.” Once again, the majority brushes aside reasonable interpretations other than its own and characterizes a word as unambiguous.
The facts of this case show that plaintiff did not take the pension funds into her possession within the dictionary definition of “receive.” Instead, defendant transferred the funds directly into an individual retirement account in her name.
The Court of Appeals decision interpreted “receive” by relying in part on interpretive letters issued by the *331 United States Department of Labor (usdol)[5] and the Michigan Employment Security Commission.[6] Both conclude that, when an employer transfers an employee’s retirement funds into an individual retirement account, the employee does not receive them for purposes of the relevant unemployment compensation laws.
The majority ignores these letters, choosing instead to construct a definition of “receive” on the basis of a dissenting opinion[7] and dictionary definitions. However, it is a long-established principle of law that “ ‘[t]he construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.’ ” Oakland Schs Bd of Ed v Superintendent of Pub Inst, 401 Mich 37, 41; 257 NW2d 73 (1977), quoting United States v Moore, 95 US (5 Otto) 760; 24 L Ed 588 (1877).
The majority offers no cogent reason to deviate from the administrative agencies’ interpretations, which provide a reasonable construction of the statutory language consistent with the purpose and the policy of the mesa. This Court should accord that interpretation due deference and hold that plaintiff *332 did not receive a retirement benefit within the meaning of § 27(f) of the mesa.
II. PUBLIC POLICY
The controversy here regarding the correct interpretation of the statutory definition of “retirement benefit” is best resolved by considering the public policy expressly declared in the mesa. It provides:
Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this state. [MCL 421.2.]
The majority disregards this part of the act despite the fact that the Legislature’s declaration of public policy contained there is of paramount importance. Plaintiff lost her position with defendant as a result of defendant’s decision to close the facility where she worked. She had vested pension benefits that defendant distributed and treated as hers prematurely.
Had defendant offered plaintiff reasonable employment, plaintiff could have left her pension benefits *333 undisturbed. Instead, it terminated plaintiffs employment and prevented her from drawing unemployment benefits. It required her to choose between paying her current living expenses or preseving her retirement monies, contrary to the explicit public policy of the state. Defendant’s scheme only exacerbated plaintiff’s economic insecurity.
III. CONCLUSION
Ambiguity exists in the statutory language of § 27(f)(4)(a) of the mesa that defines a “retirement benefit” as not including an amount paid in the course of liquidation of a private pension or retirement fund. The Court should ascertain the Legislature’s intent in using that expression by referring to the stated purpose of the MESA and the underlying public policy. With these in mind, the only reasonable construction is one that defines a pension distribution made under the circumstances of this case as not constituting a “retirement benefit.”
The meaning of “receive” is also subject to differing reasonable interpretations. In construing it, this Court should defer to the meaning that the state and federal agencies responsible for administering unemployment compensation have given to it. The majority ignores this principle, preferring a definition constructed from a dissenting opinion and dictionary definitions, which it contends is in keeping with the plain meaning of the statute. This approach is contrary to the reasonable interpretation advanced by the administrative agencies and to the purpose of and the policy underlying the mesa. The term should be construed as not inclusive of retirement funds transferred directly into an individual retirement account.
*334 I would affirm the Court of Appeals holding that plaintiff was entitled to unemployment compensation benefits under the mesa.
Markman, J., took no part in the decision of this case.

 MCL 421.27(f)(4)(a) provides:
As used in this subdivision, “retirement benefit” means a benefit, annuity, or pension of any type or that part thereof that is described in subparagraph (b) that is:
(i) Provided as an incident of employment under an established retirement plan, policy, or agreement, including federal social security if subdivision (5) is in effect.
(ii) Payable to an individual because the individual has qualified on the basis of attained age, length of service, or disability, whether or not the individual retired or was retired from employment. Amounts paid to individuals in the course of liquidation of a private pension or retirement fund because of termination of the business or of a plant or department of the business of the employer involved shall not be considered to be retirement benefits.

 It is not clear from the record whether defendant distributed retirement funds to all employees in the facility that it closed. It is known that five other employees were affected in the same way as plaintiff.

 See Random House Webster’s College Dictionary (2001).

 Defendant did not at any point during the trial and appellate proceeding contest this. Accordingly, there is no reason for this Court to question the accuracy of plaintiff’s assertion that she was required to see her retirement funds distributed. The record supports the claim.

 Usdol Unemployment Insurance Program Letter No. 22-87, Change 1 (June 19, 1995).

 Michigan Employment Security Commission Revised Benefit Interpretation No. 20.641 (November 29, 1995).

 The majority adopts the reasoning from the dissenting opinion in White v McLouth Steel Products, decided sub nom Corbett v Plymouth Twp, 453 Mich 522; 556 NW2d 478 (1996). In so doing, it reverses that part of White that is inconsistent with its holding. There is no reason to reach White. That case is easily distinguishable on the basis of the statutory provisions involved.